**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward M. CZUPRYNSKI,
Defendant–Appellant.**

**No. 93–1079.**

United States Court of Appeals,
Sixth Circuit.

Reargued June 15, 1994.

Decided Feb. 10, 1995.

Patricia G. Blake, Kathleen Moro Nesi, Asst. U.S. Atty. (reargued and briefed), Office of the U.S. Atty., Detroit, MI, and Janet L. Parker, Asst. U.S. Atty. (briefed), Office of the U.S. Atty., Bay City, MI, for plaintiff-appellee.

F. Randall Karfonta (reargued and briefed), Mogill, Posner & Cohen, Detroit, MI, and for defendant-appellant.

Edward M. Czuprynski (briefed) pro se.

Before: MERRITT, Chief Judge; and KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, and DAUGHTREY, Circuit Judges.

KENNEDY, J., delivered the opinion of the court in which MERRITT, C.J., MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, and BATCHELDER, JJ., joined. MARTIN, J. (pp. 565–68), delivered a separate dissenting opinion, in which KEITH, JONES, and DAUGHTREY, JJ., joined.

KENNEDY, Circuit Judge.

Defendant Edward M. Czuprynski appeals his conviction and sentence for possession of marijuana, 21 U.S.C. § 844(a). Defendant presents seven issues for review: 1) whether the District Court erred in denying defendant's motion to suppress evidence seized pursuant to a search warrant; 2) whether defendant is entitled to an evidentiary hearing on his claim of selective prosecution; 3) whether the District Court erred in admitting testimony relating to defendant's alleged prior use of marijuana; 4) whether defendant is entitled to a new trial because of alleged prosecutorial misconduct; 5) whether the District Judge should have recused himself; 6) whether the District Court erred in enhancing for "obstruction of justice" and departing upward from defendant's offense level under the Sentencing Guidelines; and 7) whether the District Court improperly levied fines and costs against defendant.

The original panel's disposition of the first of these issues made consideration of the remaining issues unnecessary. The majority concluded that the search of defendant's home and office was unconstitutional as the warrant lacked probable cause that contraband would be found at the time of the search. *United States v. Czuprynski*, 8 F.3d 1113, 1117–18 (6th Cir.1993), *vacated on reh'g en banc*, 16 F.3d 704 (6th Cir.1994). The majority next held that the good-faith exception to the exclusionary rule recognized by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was not applicable in this case because the supporting affidavits were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Czuprynski*, 8 F.3d at 1118 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11,

95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring)).

A majority of this Court voted to rehear this case *en banc*, thus vacating the decision of the original panel. Upon reconsideration by the full court, we conclude that the District Court properly upheld the search in this case under *Leon*. The Court voted to refer the remaining issues back to the original panel.

**I.**

The instant case involves defendant's alleged possession of 1.6 grams of marijuana. This small amount is the basis for defendant's claim of selective prosecution. At this time, however, we are concerned with how the marijuana was recovered and not the significance of the amount recovered.

Defendant is an attorney in Bay City, Michigan. The principal affidavit in support of the search warrant was that of Judith Sawicki, an attorney who worked for defendant as an associate in his law firm. Defendant fired Sawicki on February 21, 1992. In the affidavit filed March 18, 1992, Sawicki described defendant's habitual use of marijuana and the basis of her knowledge:

> Since I began working for Mr. Czuprynski, I observed that he smoked marijuana nearly every day in his law offices which are more fully described in the Affidavit of Sgt. Greg Tait. He would smoke marijuana 5 to 6 times per day, nearly every day and that behavior would almost always start in the morning and end in the evening.
>
> I know what marijuana looks like and what it smells like. I saw him smoking marijuana on numerous occasions and it was a continuing pattern of conduct for him from the beginning of my employment until the time I left. I also know what marijuana is from my own experience. I have also smoked marijuana with Mr. Czuprynski and in his office. This occurred on many occasions.
>
> . . . .
>
> Mr. Czuprynski has also delivered the controlled substance marijuana to me. This occurred recently, in January or Feb-

ruary, 1992, sometime after Christmas. He sold me ¼ ounce for $60.00.

Mr. Czuprynski keeps smoking pipes and marijuana in various places in his office and on his person and I have also observed marijuana paraphernalia in his apartment which is also more fully (and accurately) described in the Affidavit of Sgt. Greg Tait....

. . . .

From my experience with Mr. Czuprynski over the last approximate year and one month, it is my belief that he is continuing to smoke marijuana on an almost every day basis in his office and possibly at his apartment. I also know that he travels between those two places in his car. It is reasonable to believe that he would also carry or have marijuana in his automobile because he uses it so much and so regularly.

Also included in her affidavit is the assertion that defendant assaulted Sawicki on the day she was fired. At the time she executed the affidavit, Sawicki and defendant were involved in a separate dispute over the discharge in which Sawicki filed assault charges against defendant.

The affidavit was sworn to in the presence of the state magistrate who thus had the opportunity to assess her credibility. In addition, the magistrate had the affidavit of state police officer Greg Tait. In his affidavit, also sworn to before the issuing magistrate on March 18, 1992, Officer Tait described defendant's record of marijuana-related charges. In 1983, a search warrant for defendant's apartment and automobile was executed and marijuana was recovered. Defendant was subsequently acquitted of the resulting possession charge. In 1975, defendant was charged with possession of marijuana; defendant pled guilty to use of marijuana. In 1974, defendant was charged with manufacturing marijuana; defendant pled guilty to possession. Officer Tait also represented that based upon defendant's record, Tait's experience with controlled substance investigations and upon the information contained in Sawicki's affidavit, it was reasonable to conclude that defendant was engaging in a continuing pattern of possessing and

using marijuana and that there was probable cause to believe marijuana would be found in defendant's apartment, office and automobile. Officer Tait described each location with particularity.

## II.

In *Leon*, the Supreme Court grafted a good-faith exception onto the judicially-created exclusionary rule, which is applied to suppress evidence seized in violation of the Fourth Amendment. We are reminded in *Leon* that the exclusionary rule is not applied to cure the constitutional violation as "the use of fruits of a past unlawful search or seizure 'work[s] no new Fourth Amendment wrong.'" *Leon*, 468 U.S. at 906, 104 S.Ct. at 3411 (quoting *United States v. Calandra*, 414 U.S. 338, 354, 94 S.Ct. 613, 623, 38 L.Ed.2d 561 (1974)). Rather it is a remedial device that serves to deter future police misconduct. *Id.* The Court reasoned that where an enforcement officer acted with a good-faith belief that a search was constitutionally executed, the exclusionary rule should not be invoked to suppress the fruits of the search since its application would serve only to deter appropriate, objectively reasonable police conduct. The Court concluded that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918, 104 S.Ct. at 3418.

In the present case, the District Court held that Officer Tait, who obtained the search warrant from Magistrate Boes of the 74th District Court of Bay County, acted in good faith. Indeed, defendant nowhere directly impugns Officer Tait's conduct in obtaining the warrant. Defendant does allege that a warrant application was presented to "37th District Judge Scott Newcombe" before the application was presented to Boes; the person presenting the application to Newcombe is not identified. Newcombe allegedly declined to issue the warrant because he was familiar with the animosity and political friction that existed between defendant and the Bay County Prosecutor's Office. If someone did present an application to Judge

Newcombe, the record of the suppression hearing clearly establishes that it was not Officer Tait.

Q. [Street (defendant's attorney)] Prior to those two affidavits [Tait's and Sawicki's] being presented to Magistrate Boes, did you first present them to District Judge Newcomb[e]?

A. [Tait] No, sir, I did not.

Q. [Street] Did you present them to any other District Judge?

A. [Tait] No sir.

Q. [Street] Did someone direct you, instruct you, as to who it was you were to present the affidavits to for signature?

A. [Tait] I believe Tim Kelly [Bay County Prosecutor] said that Phillip Boes was available and I should take it down to him, let him review it.

The only support in the record for defendant's allegation that a warrant application was presented to Judge Newcombe is the affidavit of defendant's attorney, William Street. The affidavit states that Judge Newcombe "felt he could not be truly neutral or detached concerning this request." The affidavit was sworn to August 17, 1992. The hearing on the motion to suppress was held August 27, 1992. No testimony was offered by defendant in support of the allegation that the affidavit for the search warrant was in fact presented to Judge Newcombe. Apparently, counsel was satisfied with Tait's answer and it was the only evidence before the District Court. After Officer Tait's testimony, defendant's attorney appears to have acknowledged that Tait acted in good faith.

MR. STREET: Your Honor, I do not feel there is any additional testimony on those issues [Tait's good faith in acquisition or execution of the search warrant] because I feel, based on his testimony, it is apparent he was deliberately selected by the Bay County Prosecutor's Office because he did have a clean slate on these issues. He was functioning as their agent in good faith apparently.

Indeed, in his briefs filed with the original panel, defendant did not argue that Tait did not rely on the warrant in good faith, but rather that because the magistrate was not impartial, *Leon* did not apply.

The dissent states that Tait was aware of the hard feelings between defendant and the Bay County Prosecutor's Office. Tait testified:

Q. [Street] (defendant's attorney)] In any of your interaction with the prosecuting officials, were words uttered or things said that led you to believe there might have been some sort of a feud or grudge at stake between Mr. Czuprynski and Mr. Mullison or other members of the prosecutor's office?

A. [Tait] I didn't really know the history behind the problems between the prosecutor's office and Mr. Mullison—or Mr. Czuprynski at that time. I was led to believe from listening and talking, the questions that were presented to me, that there were some hard feelings between the two, although I was never involved in any of the direct conversations, if any, between the two.

I didn't know the exact history of what had taken place, if anything. I just ascertained from listening that there were some hard feelings between Mr. Czuprynski and the prosecutor's office.

I don't even know if it's fair to characterize them as hard feelings. Apparently there was disagreements.

Q. [Street] Disagreements and disputes?

A. [Tait] Disputes would probably be a better word for it.

There is nothing in that testimony to justify reversing the District Court's finding that Tait acted in good faith.

A determination that Officer Tait acted in good faith does not end our inquiry. The Supreme Court recognized that under "some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 922–23, 104 S.Ct. at 3420–21 (footnote omitted). These circumstances arise where: 1) the supporting affidavit contains information the affiant knew or should have known is false; 2) the issuing magistrate lacked neutrality and detachment; 3) the affidavit is devoid of information that would support a

probable cause determination making any belief that probable cause exists completely unreasonable; or 4) the warrant is facially deficient. *Id.* at 923, 104 S.Ct. at 3421. Defendant claims that the facts of this case fall under categories two and three, that is, the magistrate was neither neutral nor detached and Officer Tait's reliance upon Sawicki's affidavit was objectively unreasonable.

### A.

The good-faith exception will not apply "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)[.]" *Id.* In *Lo–Ji Sales,* an open-ended warrant in the nature of a general warrant was issued. The issuing magistrate was involved in the investigation to the extent that he participated in the search itself as an "adjunct law enforcement officer." The facts of the present case come nowhere close to the scenario in *Lo–Ji Sales;* there is no evidence that Magistrate Boes was entangled in law enforcement activities.

Defendant's claim that Magistrate Boes abandoned his judicial role rests upon a dispute the two had thirteen years earlier while both were employed by Bay County. Defendant, then county auditor, attempted to have Boes fired from his position as county purchasing agent. Defendant offered no evidence to show that Magistrate Boes still harbored resentment towards defendant or that Magistrate Boes was unable to review the information before him in an objective manner. Indeed, the record suggests that because Magistrate Boes knew defendant personally, he reviewed everything very carefully. We agree with the District Court that the evidence of the thirteen-year old dispute is too remote to demonstrate partiality on the part of Magistrate Boes.

Additionally, Officer Tait testified that he had no knowledge of any personal feud between defendant and Magistrate Boes. Officer Tait was not familiar with defendant until the day he was sent by his superior to investigate this charge, which was the very day the warrant was issued. At trial, Officer Tait also testified that he was not aware of an earlier effort of Sawicki to get a warrant for defendant's office to search for files she claimed were hers.

### B.

Next, defendant argues that the good-faith exception should not apply because the warrant was based upon an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421 (quoting *Brown,* 422 U.S. at 610–11, 95 S.Ct. at 2265). Defendant would like us to hold that no reasonably well-trained police officer could have believed that the information in Sawicki's affidavit provided probable cause to believe contraband would be found in his home, office or car. This we decline to do.

The affidavit clearly disclosed the basis of Sawicki's knowledge of defendant's regular and heavy use of marijuana. She stated that she had observed defendant use marijuana on almost a daily basis for over a year, from January 1991 to February 1992. She further stated that she had seen marijuana paraphernalia in his apartment as well as his office. Sawicki also admitted her own use with defendant. The affidavit then was contrary to her penal interest and thus, as the Supreme Court has noted, bears intrinsic evidence of credibility. *See United States v. Harris,* 403 U.S. 573, 583–84, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971)(plurality opinion).

This case does not involve an unidentified informant whose credibility can only be judged on paper. On the contrary, Sawicki appeared in person before the magistrate. Additionally, the magistrate was entitled to consider that Sawicki was an attorney, an officer of the court, who clearly understands the penalties of perjury when assessing her credibility. A police officer in Officer Tait's position should equally be entitled to consider these factors.

It is true Sawicki had been fired and had a motive to cause defendant trouble. However, persons with personal motives are often the source of very reliable information. To require a police officer to discount such infor-

mation would result in the rejection of a good deal of evidence relied upon daily by courts and juries. If a reasonable police officer cannot rely on such evidence, no juror should be permitted to do so either.

Moreover, defendant's prior convictions for marijuana and the discovery of marijuana on a third occasion which did not result in conviction corroborated Sawicki's statement that defendant was using marijuana over the period she was employed, approximately one year. In *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1959), the Court, in upholding a search warrant for narcotics, noted "that petitioner was a known user of narcotics made the charges against him much less subject to skepticism than would be such a charge against one without such a history." *See also, United States v. Dauphinee*, 538 F.2d 1, 5 (1st Cir. 1976). ("This record of violent crime is another factor which, in conjunction with the other indicia of Flaherty's propensities and associations, could properly have influenced the magistrate's decision that there was probable cause to issue the warrant [to search for guns].").

## III.

Sawicki's highly-detailed affidavit provided a substantial basis for the magistrate's probable cause determination. Its only weakness was its possible staleness. We hold that Officer Tait's good-faith reliance upon it was entirely reasonable. The District Court did not err in upholding the search.

The remaining issues are referred to the original panel.

BOYCE F. MARTIN, Jr., Circuit Judge, with whom KEITH, JONES, and DAUGHTREY, Circuit Judges, join, dissenting.

Because we believe that the search warrant in this case was based upon an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984), we dissent.

The issue decided by the district court, and by the majority of this Court, is whether evidence found during the execution of a search warrant should have been admitted under the good-faith exception to the exclusionary rule articulated in *Leon*.[1] We assume that the majority believes that there was no probable cause for the warrant, and therefore has focused on the next step, namely whether the good-faith exception applies. As this Court has previously noted, one purpose of the exclusionary rule is "to preserve the integrity of the judicial process by not having the judiciary, as one arm of the government, condone the wrongful conduct of another arm of the government." *United States v. Rodriguez*, 596 F.2d 169, 174 (6th Cir.1979). Because we believe the police officers here acted "in a way we should want to prevent in the future," *id.* at 174–75, we do not believe that the *Leon* good-faith exception should be applied to these facts.

Further, we note that another important issue in this case seems to be obscured by the Fourth Amendment concerns presented. The majority has endorsed a search which resulted in the discovery of less than a palmful of marijuana residue, including seeds and droppings. For possessing this 1.6 grams of marijuana, found during the execution of a search warrant at his law office, Edward Czuprynski was sentenced to fourteen months' imprisonment. The majority concerns itself with "how the marijuana was recovered and not the significance of the amount recovered." Majority Opinion at 561. We just cannot condone the type of

---

1. We note that the district court considered the question of whether *Leon* applied to be the "threshold issue" on whether to admit the evidence. This is incorrect. The threshold issue is whether the search was constitutional or not, i.e., whether the magistrate was detached and neutral, and whether there was probable cause to issue the warrant. The majority today seems to take the same approach, confining itself to the applicability of *Leon* and concluding that the

district court "properly upheld the search in this case under *Leon.*" Majority Opinion at 561. The problem here is that *Leon* provides an exception to the exclusionary rule; we must first find, however, that the search was unconstitutional in order to invoke the exclusionary rule. The district court and the majority opinion seem to turn Fourth Amendment analysis on its head, making the exception swallow the rule.

prosecutorial overkill that has taken place here; it only points out the great expense of this Court's time and resources in rehearing *en banc* a case involving such an insignificant amount of marijuana. We find it unnecessary to reach this concern, however, because we believe that the information submitted in support of the search warrant application did not provide probable cause that contraband or evidence would be found in the search, and that no reasonable officer could conclude that probable cause existed to secure and execute a search warrant.

Czuprynski's troubles began in February 1992 when he fired an associate with his law firm, Judith Sawicki. She then filed assault charges against him and submitted affidavits in support of search warrants for his office. After this earlier trial in the Michigan state court, Czuprynski was acquitted of the assault charges, the trial court there stating that Sawicki was "obviously a liar." Unfortunately for Czuprynski, this belief was not widely held. On March 18, 1992, Bay County prosecutors, after earlier unsuccessful attempts, obtained and executed a warrant for Czuprynski's home and office. The warrant application relied on Sawicki's affidavit alleging regular marijuana use by Czuprynski, that she had seen him smoke marijuana in his office and even smoked marijuana with him. Included in this affidavit was Sawicki's assertion that Czuprynski assaulted her on the day she was fired. But, the affidavit did not recount any specific dates, nor did it imply that Sawicki had seen Czuprynski since the date she had been fired, February 21, 1992, almost a month prior to her affidavit.

The warrant was also supported by the affidavit of Sergeant Greg Tait, a Michigan State Police Officer in Bay City, and two previous search warrants and returns. Tait's affidavit, however, offered no evidence to corroborate Sawicki's affidavit, nor did it support her reliability or credibility in any way. Moreover, while seeking the warrant, Tait understood that other police departments had declined to involve themselves with Sawicki's complaint. Tait was also aware that there were "disputes" between Czuprynski, a criminal defense attorney, and the Bay County Prosecutor's office, and that "hard feelings" existed between the two. Despite this knowledge, Tait failed to corroborate any aspect of Sawicki's affidavit by independent investigation.

The only other information submitted to support the application were the two previous search warrants and returns. These are likewise insufficient to provide probable cause. Although submitted to support the March 1992 application, they concern searches conducted in 1974 and 1983. Despite the fact that each search uncovered evidence of marijuana usage, Czuprynski was acquitted by a jury of possession charges after the 1983 search. Finally, the warrant authorizing the March 1992 search was signed by Magistrate Philip Boes of the 74th District Court, whom years earlier Czuprynski had attempted to get fired from his position at the time as Bay County purchasing agent.

Given this situation, we cannot find either probable cause from which to issue a warrant or an objectively reasonable reliance on the part of the executing police officers. We believe that the warrant was facially deficient because it failed to establish any basis for the magistrate to conclude either that Sawicki was a reliable informant in general or that her allegations in this particular case were credible. We cannot find that the wholly uncorroborated allegations of a disgruntled former employee, who had been recently fired, and who was involved in a separate dispute over that discharge, even remotely support a determination of probable cause. Under the circumstances of this case, the magistrate could not constitutionally issue a warrant without information by which to assess Sawicki's veracity. Thus, the warrant issued was facially lacking in indicia of probable cause.

A further problem with the warrant application is that it was based on stale information. Aside from the affidavit of Sawicki, whose credibility is questionable given her motive to make the affidavit, the only other information presented to the magistrate was the results of searches conducted nine and eighteen years earlier. No bright-line test exists for determining when information is

stale. Whether the information provided in support of a warrant application is

> sufficiently timely to establish probable cause depends on the particular circumstances of the case, and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. Time factors must be examined in the context of a specific case and the nature of the crime under investigation.

*United States v. Koelling,* 992 F.2d 817, 822 (8th Cir.1993) (citation omitted). Determining the staleness of information requires consideration of four factors: the defendant's course of conduct; the nature and duration of the crime; the nature of the relevant evidence; and any corroboration of the older and more recent information. *United States v. Henson,* 848 F.2d 1374, 1382 (6th Cir. 1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989).

Although our caselaw is replete with instances where information is not considered to be stale, we believe this case is different. Here, the last two factors weigh heavily in finding the information presented to support the warrant was stale. When considering the nature of Sawicki's affidavit, the lack of any corroboration, and the extreme lapse of time between this application and the prior searches, the conclusion that this information was stale is inevitable. It is certainly more than a possible weakness as the majority suggests. The tragedy of this case is that the complaining witness herself, a member of the bar who admits to possessing and using marijuana, was in a position to know that the information she provided was stale.

Turning now to *Leon,* we believe that the good-faith exception does not apply to the facts of this case. In *Leon,* the court acknowledged that no police officer could "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975)). In our view, this warrant application is an example of what the court was contemplating: an application which contains no information from which a magistrate could conclude that the informant's information is either reliable or credible. This application not only lacks information to support Sawicki's truthfulness, but it also gives rise to the probability that Sawicki made these allegations maliciously after Czuprynski fired her. Despite knowledge to this effect, Officer Tait failed to conduct any independent investigation to corroborate the allegations. Although prior efforts to obtain a warrant had failed, Tait ultimately took the application to a magistrate who had a past conflict with Czuprynski. Tait then executed the signed warrant even though he had made no effort to ensure Sawicki's credibility.

The majority reasons that the basis of Sawicki's knowledge was clear, and that her affidavit bears intrinsic evidence of her credibility because it was contrary to her own penal interest. The majority concedes that Sawicki had a motive to cause trouble. However, it then makes a generalization that "persons with personal motives are often the source of very reliable information." Majority Opinion at 564–65. While we don't doubt the truth of that statement, we would require some independent investigation to corroborate and verify the reliability of the information provided in a case such as this. In our view, rather than lending credibility to her affidavit, admitting her own criminal culpability evidences the degree of malice Sawicki harbored toward Czuprynski. We do not believe that the execution of a warrant can be in "complete good faith," *Leon,* 468 U.S. at 919, 104 S.Ct. at 3419, unless some information provides credibility to the informant's allegations. Without even any attempt to verify the information in Sawicki's affidavit, we cannot agree that Tait's actions fall within the good-faith exception of *Leon.* As noted in *Leon* at 923, 104 S.Ct. at 3421, the reasonable behavior of the officer is based upon his experience. Here, in our view, Tait was being taken advantage of by the local prosecutors, who clearly, along with Czuprynski's former employee intended to do whatever

they could to remove Czuprynski from his law practice.

We therefore dissent.