107 F.3d 872
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darlene MEREDITH and Joseph Meredith, Defendants-Appellants.
 Nos. 96-5990, 96-5991.
 United States Court of Appeals, Sixth Circuit.
 Feb. 19, 1997.
 
 Before: KENNEDY, NELSON, and VAN GRAAFEILAND, Circuit Judges.[1]
 PER CURIAM.
 
 
 1
 Defendants, Joseph E. Meredith and Darlene S. Meredith, appeal their judgments of conviction entered on guilty pleas to possession of a firearm by convicted felons, in violation of 18 U.S.C. § 922(g)(1), and the denial of a motion to suppress evidence in connection with a search of their residence. For the reasons set forth below, we AFFIRM the judgments of the District Court.
 
 I.
 
 2
 On February 6, 1995, Officer Glenn Bratcher of the Bowling Green Police Department, arrested James Long on a warrant for non-support of his children. During the ride to the police station, Officer Bratcher questioned Long and Long admitted to committing two burglaries; one burglary involved his mother's house two days prior to his arrest. Long informed Bratcher that he took the stolen items, stereo components, from his mother's house to the home of the defendants and traded them for cash and Dilaudid, a controlled substance. Once Long arrived at the police station, Officer Danny Vickous, a drug detective for the Bowling Green Police Department, continued to question Long regarding the burglaries. Long informed Vickous that, on February 4, 1995, he stole a Sony CD changer and four Kenwood speakers from his mother's residence and transported the items to the home of the defendants. At the Merediths' home, he traded the stereo equipment with Ms. Meredith for three Dilaudid tablets and twenty dollars. Long described the stolen property and informed the officers that he last saw the property at the Merediths' home on February 5, 1995 in a plastic grocery bag in the rear bedroom of the house. He also explained that the Dilaudid he received was removed from an amber bottle enclosed in a brown cigarette style case with a snap top.
 
 
 3
 Because Long could not recall the exact address of the Merediths' home, officers took him by patrol car to identify the residence. During the ride, Long pointed out the house at 844 Mt. Olivet-Girkin Road as belonging to the Merediths. In addition to identifying the house, Long diagrammed the layout of the home for the officers and described where the stolen property could be found. Presumably, as a result of giving this information to the officers, Long was never taken to jail on the arrest warrant for non-support. In addition, the warrant was changed to a summons.
 
 
 4
 With this information provided by Long,[2] Officers Vickous and Bratcher approached an Assistant Commonwealth Attorney regarding obtaining a search warrant. The attorney drafted the search warrant and affidavit for search warrant. The affidavit for search warrant[3] described the personal property to be seized as follows:
 
 Sony 10-disc CD changer (auto version)
 2 Kenwood 6 X 9 3-way speakers
 2 Kenwood 4"' 2-way speakers
 
 5
 1 brown soft sided cigarette case with snap top
 
 
 6
 The narrative statement of probable cause contained in the affidavit read:
 
 
 7
 On the 6th day of February, 1995, at approximately 11:00 a.m. affiant received information from:
 
 
 8
 James Long at BGPD [Bowling Green Police Department] that he had transferred stolen property to Darlene Meredith at 844 Mt. Olivet-Girkin Rd in Bowling Green, Warren County, Ky. in exchange for 3 Dilaudid tablets and $20 cash. The stolen property consisted of 1 Sony Auto CD 10-disc CD changer, 2 6 X 9 Kenwood speakers, 2 4"' Kenwood Speakers. Long transferred this stolen property on January 4th, 1995. Long returned to 844 Mt. Olivet-Girkin Rd. on January 5, 1995 approximately 4:30-5:00 p.m. and saw the stolen property in the bedroom upstairs at 844 Mt. Olivet-Girkin Rd. He also saw what appeared to be controlled substances in a brown cigarette case which Darlene Meredith carries frequently. The Dilaudid which Long got in return for the stolen property came from the brown cigarette case.
 
 
 9
 Affiant has reasonable and probable cause to believe the grounds exist for the issuance of a Search Warrant based on the aforementioned facts, information and circumstances and prays that a Search Warrant be issued, that the property be seized, or any part thereof, and brought before any court and/or retained subject to order of said court.
 
 
 10
 (emphasis added). A state judge issued a warrant based on this affidavit authorizing a search for the property described in the affidavit for search warrant. As emphasized, the narrative statement in the affidavit identifies the dates of the transfer and observance of the property as January 4 and 5, 1995, instead of February 4 and 5, 1995.
 
 
 11
 Before executing the search warrant, the executing officers were briefed by Vickous on what to expect when executing the search warrant. The officers were specifically told that they would be looking for stereo equipment and Dilaudid in a brown cigarette case. Long had informed Vickous that the Merediths were frequently armed and would likely flush contraband down the toilet. Accordingly, the officers were urged to use caution because there might be guns in the house and Vickous informed the officers as to the location of the toilet in the house where contraband would likely be disposed. One officer, Cliff Meeks, testified that he was not specifically told to search for weapons in the house but was, rather, concerned that there might be weapons in the home given his knowledge of the Merediths' involvement in drug transactions. Officers Vickous and Meeks were personally aware that the Merediths were convicted felons.
 
 
 12
 After the briefing, several officers went to the Merediths' residence to execute the search warrant. The search was audio and videotaped. Officer Vickous attempted to open the front door but it was locked. He then banged on the door approximately three times announcing the police presence and the possession of a search warrant. After one to a few seconds without a response, Vickous struck the door with a sledge hammer to gain entrance into the home. Vickous testified that he did not wait for too long before gaining entrance to the home in order to "alleviate any drugs being disposed of."
 
 
 13
 Upon entry to the Merediths' residence, Officers Bratcher and Case ran to the upstairs of the home and found the defendants. Eugene Meredith[4] was found in the master bedroom and Darlene Meredith was found in the bathroom. The officers ordered Ms. Meredith out of the bathroom and she complied. After she exited the bathroom, Officer Bratcher noticed that the toilet had been flushed and retrieved from the swirling water a small glass bottle containing tablets of Dilaudid.
 
 
 14
 Officers Case and Bratcher soon had the Merediths secured. Several minutes later, the officers found the stereo equipment on the floor of the bedroom and the brown cigarette case on the bed. Approximately thirty to forty seconds after Case and Bratcher found the Merediths, Officer Vickous was told that "everything was secure and that the house was safe." Officer Bratcher testified that he remembers someone saying that the upstairs was secure after he found the Merediths but he could not remember whether he or Officer Case made the announcement.
 
 
 15
 After the Merediths were secured, they were taken to the living room of the house. At some point while Officers Case and Bratcher were securing the Merediths, Officer Meeks conducted a protective sweep of the upstairs of the house. Meeks checked inside the bedrooms, inside the closets, and underneath the beds. During the sweep, Officer Meeks discovered a large number of guns under a bed and some ammunition in another bedroom under a pillow. Officer Meeks testified that he may have moved the pillow when he threw up the bedspread to look underneath the bed in one of the bedrooms. Once the pillow was moved he could see the ammunition.
 
 
 16
 In the living room, the officers advised the Merediths of their Miranda rights, read the search warrant, and asked who owned the tablets in the glass vial found in the toilet. Neither defendant indicated that they wished to speak to an attorney or remain silent. They denied selling or trading drugs, but Eugene Meredith admitted that the drugs belonged to his wife and that they were for her personal use. Darlene Meredith informed the officers that she gave Long $140 for the CD player and the speakers. Regarding the guns found underneath the bed, Eugene Meredith stated that he either purchased the guns or had taken them in on pawn. When Officer Vickous asked the Merediths whether there were any other guns in the house, Eugene Meredith replied that there were twenty or thirty in the house.
 
 
 17
 The officers asked defendants for permission to conduct a search of the remainder of the house. The Merediths initially agreed but then refused to sign a written consent and asked to speak to their attorney. Upon conferring with their attorney, defendants refused to consent to a search of the home. Accordingly, Officer Vickous returned to the Commonwealth Attorney's Office and obtained a second search warrant. Pursuant to the second search warrant, the guns found during the execution of the first search warrant were seized in addition to several other items. The property seized included fifteen firearms, ammunition, a substantial amount of cash, food stamps and drug paraphernalia. Eugene Meredith and Darlene Meredith were indicted on May 1, 1995, in a two count indictment. Count 1 alleged that the Merediths, having been previously convicted of felony narcotics offenses, aided and abetted by the other, possessed a total of sixteen firearms, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). Count 2 charged that the Merediths possessed approximately 200 rounds of ammunition in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a(2).
 
 
 18
 The Merediths filed a motion to suppress the evidence found at their residence on February 6, 1995. The matter was referred to a magistrate judge and, following a hearing,[5] the magistrate judge recommended that the motion be denied. The District Court adopted the magistrate judge's findings of fact and conclusions of law and denied the defendants' motion to suppress.
 
 
 19
 On March 26, 1996, the Merediths entered pleas of guilty to Count 1 of the indictment conditioned on their right to appeal the denial of the motion to suppress. The District Court sentenced Joseph Eugene Meredith to twenty-four months imprisonment and Darlene Meredith to twelve months imprisonment.
 
 II.
 A. Knock and Announce Requirement
 
 20
 In their first assignment of error, the Merediths claim that the officers violated their Fourth Amendment rights when they forcibly entered their home without exigent circumstances. The magistrate judge found that the forcible entry into the residence was reasonable in light of the officers' knowledge that the defendants were generally armed with handguns and because there was in the residence a drug which could be easily flushed down a toilet. Defendants claim that the magistrate judge's conclusion is erroneous because the search warrant did not permit the officers to search for controlled substances.
 
 
 21
 On appeal from a denial of a motion to suppress, this Court reviews the District Court's legal conclusions de novo; the District Court's factual findings are reviewed only for clear error. See United States v. Bates, 84 F.3d 790, 794 (6th Cir.1996) (citing United States v. Radka, 904 F.2d 357, 361 (6th Cir.1990)).
 
 
 22
 The knock and announce rule codified at 18 U.S.C. § 3109 provides that an officer "may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant if, after notice of his authority and purpose, he is refused admittance[.]" Section 3109 does not govern the outcome of this case as § 3109 applies only to federal officers. However, as recently pronounced by the United States Supreme Court in Wilson v. Arkansas, 115 S.Ct. 1914 (1995), the knock and announce principle is an element of the Fourth Amendment's reasonableness inquiry, and is thus applicable to searches conducted by state officers. Id. at 1918. As concluded by the Court in Wilson, "[g]iven the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure." Id. However, "[t]he Fourth Amendment's flexible requirement of reasonableness" will not require a rigid application of the knock and announce requirement in all circumstances. Indeed, the Supreme Court acknowledged that there may be circumstances where an unannounced entry into a dwelling will be justified but left it to the lower courts to determine under what circumstances an unannounced entry is justified. Id. at 1919.
 
 
 23
 This Circuit has determined that an unannounced entry is permissible when "(1) the persons within already know of the officers' authority and purpose; (2) the officers have a justified belief that someone within is in imminent peril of bodily harm; or (3) the officers have a justified belief that those within are aware of their presence and are engaged in escape or the destruction of evidence." Bates at 795 (citing United States v. Finch, 998 F.2d 349, 353 (6th Cir.1993)). As noted, the officer must have a justified belief, not merely a hunch or suspicion, before an exigency will permit the disregard of the knock and announce requirement. Bates at 795. We are obliged to closely scrutinize an entry made without a sufficient knock and announcement of police presence. Id. Even under close scrutiny, we conclude that the District Court did not err in finding that the officers' entry into the Merediths' residence was reasonable under the Fourth Amendment.
 
 
 24
 In this case, both parties agree that a knock and announcement was made, but defendants allege that there were no exigent circumstances justifying the forcible entry into the house with the sledge hammer just a few seconds after the knock and announcement. We disagree. The justifiable belief that an individual may destroy drug evidence can create an exigent circumstance excusing strict compliance with the knock and announce requirement. Here, the search warrant authorized the officers to search for "1 brown soft sided cigarette case with snap top" which the officers were advised contained Dilaudid. The officers had also been informed by Mr. Long that the Merediths would likely flush any contraband down the toilet. In addition, an easily disposable quantity of drugs was at issue. The officers' knowledge of these facts entitled them to a justifiable belief that the Merediths would engage in the destruction of evidence upon a knock and announcement of police presence.
 
 
 25
 These circumstances are wholly unlike those in Bates, a case upon which the defendants rely, where the officers had no information that the defendants were likely to dispose of controlled substances and where we concluded that "it is unreasonable to think that fifteen kilograms of powder cocaine could be quickly disposed of by flushing it down the toilet or dumping it down the sink." Id. at 796-97. We, therefore, agree with the District Court that the entry was reasonable under the circumstances.[6]
 
 
 26
 B. Good Faith Exception to the First Search Warrant
 
 
 27
 Neither party challenges the magistrate judge's conclusion that the first search warrant lacked probable cause due to the mistaken dates in the narrative statement. However, defendants assert as error the magistrate judge's conclusion that the evidence seized pursuant to the first search warrant need not be suppressed under the good faith exception to the warrant requirement. We review the District Court's conclusion that officers reasonably and in good faith relied on a search warrant de novo. United States v. Bowling, 900 F.2d 926, 930 (6th Cir.1990).
 
 
 28
 In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court announced the good faith exception to the exclusionary rule wherein the suppression of evidence obtained pursuant to an invalid search warrant is suppressed only in those cases where suppression will further the purposes of the judicially created exclusionary rule. In creating the good faith exception, the Court recognized that the purpose of the exclusionary rule, to deter police misconduct, is not served by suppressing evidence seized by an officer in reliance on a facially valid search warrant. Id. at 919-21. As long as an officer's reliance on the issuing judge's determination of probable cause is "objectively reasonable," evidence seized pursuant to an ultimately invalid search warrant need not be suppressed. Id. at 922. In Leon, the Court enumerated the following four situations in which an officer's reliance would be unreasonable: (1) where the affiant included information in the affidavit that he "knew was false or would have known was false except for his reckless disregard of the truth" and that information misled the issuing judicial officer; (2) where the issuing judge wholly abandons his or her judicial role; (3) where the affidavit is so lacking in indicia of probable cause as to render official belief in its validity entirely unreasonable; and (4) where the warrant itself was so facially deficient that the executing officers could not reasonably presume it to be valid. Id. at 923.
 
 
 29
 Defendants argue that all four circumstances exist justifying our refusal to apply the good faith exception. They allege that the erroneous dates in the affidavit and the affidavit's failure to indicate any corroboration or independent investigation on the part of the officers are sufficient to constitute reckless disregard of the truth, an affidavit so lacking in indicia of probable cause as to render official belief in its validity entirely unreasonable, and a warrant so facially deficient that the executing officers could not reasonably presume it to be valid. Lastly, they argue that the warrant was not issued by a neutral and detached magistrate judge because the issuing judge had only refused to issue five warrants of approximately two hundred in his eighteen years on the bench.
 
 
 30
 We, however, find that none of these four circumstances exist in the present case. First, unlike the cases cited by the defendants, the officers here did not furnish information that was false or in reckless disregard of the truth. In comparison, the officer in United States v. Baxter, 889 F.2d 731 (6th Cir.1989), misrepresented to the magistrate judge the nature and character of the source of his information; he did not disclose that his source was an anonymous tipster who had not provided reliable information in the past and whose reliability was not corroborated. In the instant case, there is no evidence that any deficiency in the affidavit resulted from a knowing misstatement or reckless falsity on the part of the officer.[7]
 
 
 31
 We also do not find that the affidavit was so lacking in indicia of probable cause as to render official belief in its validity entirely unreasonable or that the warrant itself was so facially deficient that the executing officers could not reasonably presume it to be valid. The principal officers involved in the search, Officers Bratcher and Vickous, had considerable knowledge of their own to support an objective belief that the warrant and the supporting affidavit were sufficient. Long gave detailed information about the stolen property, the Dilaudid, and the location of the goods and controlled substances. Additionally, Long identified the Merediths' residence and drew a diagram of the interior. Further, Long's statements were against his own penal interest, another basis for reliability. See United States v. Czuprynski, 46 F.3d 560, 564 (6th Cir.1995) (en banc). If there was a mistake in determining probable cause in this case either due to the mistaken dates recited in the affidavit or by the lack of corroboration, it was made by the state magistrate judge who issued the warrant. "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Leon at 921.
 
 
 32
 Finally, defendants' recitation of the number of warrants the magistrate judge issued as compared to the number he refused to issue is insufficient to conclude that the magistrate judge was not acting as a detached and neutral judicial officer. The District Court properly applied the good faith exception to the first search warrant.
 
 C. Protective Sweep
 
 33
 In their third assignment of error, defendants contend that the firearms and ammunition obtained as a result of the protective sweep of the upstairs of their home must be suppressed because the officers indicated "we are secure up here" before the protective sweep and because the officers had no reason to believe that the evidence found was incriminating.
 
 
 34
 In determining whether the District Court properly concluded that the evidence viewed during the protective sweep should not be suppressed, we review the District Court's legal conclusions de novo; the District Court's factual findings are reviewed only for clear error. See United States v. Bates, 84 F.3d 790, 794 (6th Cir.1996) (citing United States v. Radka, 904 F.2d 357, 361 (6th Cir.1990)).
 
 
 35
 The Fourth Amendment permits a limited "protective sweep" in conjunction with an arrest inside a home in order "to protect the safety of police officers and others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." United States v. Johnson, 9 F.3d 506, 510 (6th Cir.1993) (citing United States v. Rigsby, 943 F.2d 631, 637 (6th Cir.1991)). The protective sweep "may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than it takes to complete the arrest and depart the premises." Maryland v. Buie, 494 U.S. 325, 335-36 (1990). If, during the protective sweep, officers see items in plain view and have probable cause to believe those items are evidence of a crime, they may seize them. Id. at 330; Arizona v. Hicks, 480 U.S. 321, 326-27 (1987). We conclude that Officer Meeks' sweep was within the limits set forth by Buie and that he had probable cause to believe the guns and ammunition were evidence of a crime. Officer Meeks limited his search to places where persons could be hiding such as under beds and in closets;[8] the protective sweep was, therefore, properly limited. Once Meeks saw the gun and ammunition, he had probable cause to believe they were evidence of a crime. Contrary to defendants' assertions, both Officers Vickous and Meeks were personally aware that the Merediths were convicted felons. Officer Meeks was permitted to engage in a protective search of the premises even in light of the testimony that one of the officers indicated, "we are secure up here." We conclude that an officer's declaration "we are secure up here" may have simply indicated that the defendants were in custody. Under this scenario, the officers were not prohibited from engaging in a protective sweep simply because the defendants had been apprehended. The purpose of a protective sweep is to protect the officers and others not just from the defendants but from anyone who might pose a danger.
 
 
 36
 Officer Meeks' search of the bedroom that led to the discovery of the firearms and ammunition was also justified for a second reason; Officer Meeks was entitled to look underneath the bed in the bedroom pursuant to the search warrant. The warrant permitted a search for "1 brown soft sided cigarette case with snap top and stereo equipment." Accordingly, the officer was permitted to search in any location that the cigarette case or stereo equipment might be found, including underneath a bed.
 
 D. Silver Platter Doctrine
 
 37
 In the defendants' last assignment of error, the Merediths urge this Court to hold that the "silver platter doctrine" precludes admission of the evidence obtained pursuant to the first search warrant in the federal prosecution because it lacked probable cause and because the good faith exception does not apply in federal prosecutions.
 
 
 38
 The "silver platter doctrine" was developed by the United States Supreme Court when the Fourth Amendment did not apply to the states. The Supreme Court was once of the view that any evidence seized pursuant to a legal search conducted by state officers, although illegal under the Fourth Amendment, could be handed over "on a silver platter" for use in a federal criminal prosecution. See United States v. Searp, 586 F.2d 1117, 1120 (6th Cir.1978) (citing Weeks v. United States, 232 U.S. 383 (1914)). After the Supreme Court held that the Fourth Amendment applied to the states via the Fourteenth Amendment in Wolf v. Colorado, 338 U.S. 25 (1949), the Supreme Court in 1960 rejected the silver platter doctrine. See Elkins v. United States, 364 U.S. 206 (1960). In Elkins, the Supreme Court dictated that "[i]n determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out." Id. at 223-24. Thus, there is no longer a viable "silver platter doctrine." See also California v. Greenwood, 486 U.S. 35, 43 (1988) (Court rejected defendant's argument "that his expectation of privacy in his garbage should be deemed reasonable as a matter of federal constitutional law because the warrantless search and seizure of his garbage was impermissible as a matter of California law.")
 
 
 39
 In addition, the defendants' contention that the good faith exception does not apply in federal court is misplaced. In United States v. Leon, the case in which the Supreme Court espoused the good faith exception to the warrant requirement, the Court applied the good faith exception to state officers relying on a state magistrate judge's issuance of a warrant lacking probable cause. Id. at 901-02, 926. The case upon which defendants rely, United States v. Wright, 16 F.3d 1429 (6th Cir.1994), held only that the resolution of a motion to suppress evidence obtained by state officers in federal court is governed by the Fourth Amendment and not by state rules of law and whether the seizure violated state law is irrelevant in a federal prosecution. Id. at 1434.
 
 
 40
 For these reasons, the defendants' contention that, in a federal prosecution, the good faith exception to the warrant requirement should not apply to evidence seized by state officers pursuant to a warrant lacking probable cause is meritless.
 
 III.
 
 41
 For the foregoing reasons, the judgments of the District Court are AFFIRMED.
 
 
 
 [1]
 The Honorable Ellsworth A. Van Graafeiland Senior United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [2]
 Long had never been used by the Bowling Green Police Department as a confidential informant in the past
 
 
 [3]
 Officer Vickous was the affiant on the affidavit for search warrant
 
 
 [4]
 The parties refer to Joseph E. Meredith as Eugene Meredith
 
 
 [5]
 At this hearing, the state district judge who issued the first and second warrants testified that, during his 18 years on the bench, he had issued approximately 200 warrants and had refused to sign approximately five. He further testified that, when he reviewed the first search warrant, he did not inquire of Officer Vickous whether the information contained in the affidavit was stale in light of the fact that the relevant dates in the affidavit were cited as January 4 and 5. He did not make such an inquiry because a thirty day time frame to him was not a hinderance to the issuance of a search warrant. He could not recall whether he asked Officer Vickous if he had independently corroborated the information in the affidavit. He also testified that the personal property described on the warrant was the only property that was to be the subject of the search
 
 
 [6]
 We reject the Defendants' request to set forth "what is a reasonable amount of time that officers should wait before entering a residence to execute a search warrant when there are no exigent circumstances." Appellants' Br. at 20. This Circuit has rejected similar requests. See United States v. Gatewood, 60 F.3d 248, 250 n. 3 (6th Cir.), cert. denied, 116 S.Ct. 546 (1995). To set such a rigid rule would be contrary to the Fourth Amendment's "flexible requirement of reasonableness" consistently recognized by the Supreme Court and acknowledged in Wilson v. Arkansas, 115 S.Ct. 1914, 1918, in the specific context of the knock and announce principle
 
 
 [7]
 In fact, the erroneous dates in the affidavit would have made it less likely that the magistrate judge would have issued a warrant, not more likely
 
 
 [8]
 Defendants contend that Officer Meeks impermissibly lifted a pillow during his search and in doing so found ammunition. Officer Meeks testified that the pillow moved when he lifted the bedspread to look underneath the bed. Because defendants offered no evidence to the contrary at the suppression hearing, there is no factual dispute in this regard and we, therefore, take Officer Meeks testimony as the only evidence presented