NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0175n.06

No. 25-1190

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 17, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| MATTHEW JOSEPH SHEEHAN, | ) | OPINION |
| Defendant-Appellant. | ) | |

Before: SILER, MOORE, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Following tips from multiple confidential informants, police stopped Matthew Joseph Sheehan as he drove home from a suspected drug run. A canine indicated that it detected drugs in the vehicle, and a subsequent search revealed illicit substances in the trunk. Sheehan moved to suppress this evidence as the product of an unconstitutional stop, but the district court denied the motion after concluding that the police had reasonable suspicion to believe Sheehan was engaged in drug trafficking. We agree with the district court and affirm.

**BACKGROUND**

Michigan State Police's investigation into Matthew Joseph Sheehan's drug trafficking activities largely stemmed from several confidential informants. In September 2022, two different confidential informants told police that Sheehan trafficked illicit drugs from Minnesota and distributed them in and around Iron River, Michigan. One of those informants described where Sheehan lived and indicated that he drove a white car. In November 2022, a third confidential informant, whom we refer to as CI 6402, reported that Sheehan was distributing illegal substances

in Iron River and told police they thought that Sheehan's source was located somewhere to the south of Iron River. CI 6402 also described where Sheehan lived and indicated that he drove a white car. A few months later, CI 6402 completed a controlled buy of MDMA from Sheehan at his residence, which was the same as the one described by the earlier informants. Police surveilled the controlled buy and recorded audio from the transaction on a device carried by CI 6402. Afterwards, police confirmed that the address where the buy took place, the vehicles located at that address, and the phone number provided by one of the informants all belonged to Sheehan. Later, a fourth informant also told police that Sheehan trafficked drugs into Iron River.

Around the same time, CI 6402 informed police that Sheehan was having trouble with his methamphetamine supply source, who had possibly been arrested. But CI 6402 stayed in touch with the officers and told them in February 2023 that Sheehan had found a "new source of supply" in La Crosse, Wisconsin, Sheehan's hometown. Mot. to Suppress Hr'g Tr., R. 112, PageID 679. The next month, CI 6402 alerted police that Sheehan would soon travel to La Crosse to retrieve a "large shipment" of methamphetamine. *Id.* at PageID 692.

The Michigan State Police were able to corroborate CI 6402's tip that Sheehan had been sourcing drugs in La Crosse with historic cell-site data. The data showed that Sheehan made monthly trips to La Crosse and nearby Caledonia, Minnesota, between March 2022 and November 2022. The cell-site data also revealed that these trips ceased between November 2022 and March 2023, consistent with CI 6402's information that Sheehan was having difficulty sourcing drugs at that time.

With all this information about Sheehan's activities, in June 2023 police obtained a "ping" warrant for Sheehan's cell phone, which provided them with the real-time location of Sheehan's phone every fifteen minutes for thirty days. By tracking the phone, the police discerned on June

24, 2023, that Sheehan traveled south roughly four and a half hours from Iron River to La Crosse and nearby Brownsville, Minnesota. He stayed there for about two hours before turning back toward Iron River. Given his knowledge of the investigation into Sheehan, and his training and experience, Detective Cole Hodge "believed that Mr. Sheehan was on a drug run and had just obtained a new . . . shipment of drugs." *Id.* at PageID 671. Not wanting to miss this opportunity to catch him in the act, Detective Hodge instructed fellow officers to stop Sheehan based on reasonable suspicion that he was then trafficking controlled substances.

Michigan police stopped Sheehan as he returned to Iron River, in accordance with Detective Hodge's instructions. A canine positively alerted that his vehicle contained illegal drugs, so the officers searched his car. The officers recovered roughly a pound of methamphetamine from a safe in the trunk.

Based in part on the evidence seized from Sheehan's vehicle, police subsequently obtained a search warrant for Sheehan's residence. During that search, officers found more illicit substances, large amounts of currency, and drug trafficking tools, like packing materials and a scale.

With this evidence, the government indicted Sheehan for knowingly and intentionally possessing, with intent to distribute, methamphetamine. *See* 21 U.S.C. § 841(a)(1), (b)(1)(c). Sheehan moved to suppress the evidence recovered from his car as the product of an unconstitutional stop. And, given that the warrant to search his residence relied on the drugs found in his car (i.e., was the fruit of a poisonous tree), Sheehan argued that the evidence recovered from his residence also had to be suppressed. After a hearing with officer testimony, the district court concluded that the officers had reasonable suspicion to stop Sheehan, so it denied Sheehan's motion to suppress. Sheehan pleaded guilty to a single count of possessing, with intent to

distribute, methamphetamine. The district court sentenced him to 84 months of imprisonment plus three years of supervised release and a $1,000 fine.

Sheehan's plea agreement expressly reserved his right to appeal the denial of his motion to suppress, a right he timely exercised.

**ANALYSIS**

Sheehan challenges the district court's conclusion that officers had reasonable suspicion to stop him as he drove back from La Crosse to Iron River, and its resulting denial of his motion to suppress. We review de novo the district court's determination that the officers had reasonable suspicion. *United States v. Young*, 707 F.3d 598, 602 (6th Cir. 2012). While reasonable suspicion requires law enforcement to rely on "articulable facts that criminal activity may be afoot," the standard "is quite low." *United States v. McCallister*, 39 F.4th 368, 373 (6th Cir. 2022) (citation modified). Whereas probable cause requires a "fair probability" or "substantial chance" of criminal activity, reasonable suspicion requires only "a moderate chance of finding evidence of wrongdoing," *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009) (citation modified), based on the "totality of the circumstances," *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

We agree with the district court's conclusion that there was reasonable suspicion to stop Sheehan on June 24, 2023. Consider the information the police collected in the months leading up to the stop. Four different confidential informants, at three different times, told officers that he was trafficking drugs from south of the Michigan border and distributing them in Iron River. Three of the informants identified Wisconsin or Minnesota as the location of his supply. Cell-site data confirmed that Sheehan repeatedly made brief trips south to the La Crosse area, on the border of Wisconsin and Michigan, and returned to Iron River. These trips halted shortly before CI 6402

told the police that Sheehan's supply had run dry. A surveilled and recorded controlled buy further corroborated the informants' assertions that Sheehan distributed drugs in Iron River. And then CI 6402 informed police that Sheehan had found a new supplier. A few months later, when a ping warrant on Sheehan's phone revealed that he had again driven four and a half hours to the La Crosse area and stopped there only briefly before turning back toward Iron River, there was— given all the information—at least a "moderate chance" that stopping him could yield evidence of criminal activity. *Redding*, 557 U.S. at 371; *see also United States v. Clark*, 319 F. App'x 395, 407 (6th Cir. 2009) (affirming that officers had reasonable suspicion for a stop when suspected drug traffickers returned home along their typical route as described by confidential informants).

Sheehan's counterarguments do not persuade us otherwise. First, he argues that the confidential informants were unreliable because they cooperated with officers in part to receive more favorable treatment on pending felony charges and because two of them had previous convictions for Federal Rule of Evidence 609(a)(2) "dishonest or false statement" offenses. But even assuming these facts rendered the informants' tips less reliable, here police corroborated their tips. In *United States v. Crawford*, we explained that when police rely on new confidential informants, relevant factors for crediting their reports include whether "the officer could verify key information received from the informant" and whether "the officer could identify multiple sources providing the same information." 943 F.3d 297, 307 (6th Cir. 2019). Here, officers did both. And when police corroborate a confidential informant's tip through their own investigation, that tip can reasonably be considered reliable. *See Draper v. United States*, 358 U.S. 307, 313 (1959); *Crawford*, 943 F.3d at 306–07; *see also United States v. Jenkins*, No. 22-3687, 2023 WL 3963626, at *2 (6th Cir. June 13, 2023).

Next, Sheehan argues that the informants' information was stale because the officers stopped him multiple months after receiving the tips. *See United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004). But this argument is also unavailing. When considering staleness, we look to "the defendant's course of conduct; the nature and duration of the crime; the nature of the relevant evidence; and any corroboration of the older and more recent information." *United States v. Helton*, 314 F.3d 812, 822 (6th Cir. 2003) (quoting *United States v. Czuprynski,* 46 F.3d 560, 567 (6th Cir. 1995) (en banc)). Here, all those factors lean in the government's favor. Sheehan's drug trafficking was an ongoing crime, as evidence indicated he had been engaged in it since at least March 2022, and "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001); *see United States v. Abboud*, 438 F.3d 554, 573 (6th Cir. 2006). It is true that some of the confidential informants' tips were several months old, but this timeframe fits the information conveyed by CI 6402, who indicated that Sheehan had temporarily lost his supplier. Police also corroborated many facts provided by the informants. For one, the controlled buy demonstrated the informants had correctly identified Sheehan as someone who sold drugs. Moreover, the residence, car, and phone number identified by the informants all matched those owned by Sheehan. And the cell-site data further confirmed that Sheehan had sourced drugs in La Crosse and nearby areas. Altogether, it was reasonable for police to believe stopping Sheehan as he returned from La Crosse in June could uncover evidence of wrongdoing, especially within the context of the "quite low" reasonable suspicion standard. *McCallister*, 39 F.4th at 373.

Because we agree with the district court that reasonable suspicion supported the stop, Sheehan's challenge to the residential search warrant also fails. Indeed, Sheehan asks us to review the warrant affidavit for the search of his residence only if we determine that it was tainted with

impermissible evidence from the vehicle search. But since that evidence was constitutionally obtained, there is no basis for relief as to the search of his home.

## CONCLUSION

We affirm the district court's denial of Sheehan's motion to suppress and therefore affirm his conviction.