RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0003P (6th Cir.)
File Name: 03a0003p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

GERMAINE HELTON,
  *Defendant-Appellant.*

No. 00-2381

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 99-20015—Victoria A. Roberts, District Judge.

Argued: July 30, 2002

Decided and Filed: January 6, 2003

Before: SILER, COLE, and CLAY, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** William T. Street, KLIMASZEWSKI & STREET, Saginaw, Michigan, for Appellant. Michael Hluchaniuk, ASSISTANT UNITED STATES ATTORNEY, Bay City, Michigan, for Appellee. **ON BRIEF:** William T. Street, KLIMASZEWSKI & STREET, Saginaw, Michigan, for Appellant. Michael Hluchaniuk, ASSISTANT UNITED STATES ATTORNEY, Bay City, Michigan, for Appellee.

1

COLE, J., delivered the opinion of the court, in which CLAY, J., joined. SILER, J. (pp. 21-22), delivered a separate dissenting opinion.

————————————

**OPINION**

————————————

R. GUY COLE, JR., Circuit Judge.  Defendant-Appellant, Germaine Helton, pleaded guilty under a conditional plea agreement to one count of possession of crack cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and one count of possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Helton now exercises a right he reserved under the conditional plea agreement by appealing the district court's denial of his motion to suppress cocaine base and firearms, which were seized pursuant to a search warrant.  In his appeal, Helton advances three arguments: (1) the search warrant violated the Fourth Amendment because it lacked probable cause and because the good-faith rule articulated in *United States v. Leon*, 468 U.S. 897 (1984), does not apply here; (2) he was entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to ascertain whether the false statements in the search warrant affidavit were made with reckless disregard for the truth; and (3) the allegations in the search warrant affidavit were stale and, for that reason, could not validly form the basis for a search warrant. Because there was no probable cause for the search and because the *Leon* good-faith rule does not apply here, we **REVERSE** the district court's denial of Helton's suppression motion and **REMAND** this case for proceedings consistent with this opinion.

**I.**

On December 2, 1998, a magistrate judge authorized a warrant for the search of several residences in Saginaw, Michigan suspected of having evidence of illegal drug activity.  The goal of the search was to gather evidence to

affidavit is judged on the adequacy of what it does contain, not what it lacks, or what a critic might say should have been added." *Id.* at 974. Therefore, although we can find instances within the affidavit in this case where more detail could have been supplied, we should look at the affidavit and the warrant in accordance with *Leon*, 468 U.S. at 905.

The defendant claims that *Leon* is not applicable because the belief by the officer that probable cause existed is completely unreasonable. As in *Leon*, the application for the warrant here was supported by much more than a "bare bones" affidavit. It was certainly reasonable enough for the magistrate judge to find that there was probable cause, and it was reasonable enough for the district court to find that the officers did not act unreasonably in relying upon it in this case. In *United States v. Czuprynski*, 46 F.3d 560, 564 (6th Cir. 1995)(*en banc*), we held that the *Leon* good-faith exception applied to uphold that warrant. Although the facts in *Czuprynski* are not the same as those in the present case, I would still find that there is a good-faith exception under *Leon*, given the totality of the circumstances, and affirm the decision of the district court.

I would also affirm the decision of the district court in denying a hearing under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), as the defendant did not make a sufficient showing for such a hearing.

extirpate the drug trafficking scheme orchestrated by Derrick "Dino" Peterson, Victoria Swain, and Ruby "Rudy" Liddell. As part of its comprehensiveness, the warrant authorized search of the residence at 723 N. Harrison Street in Saginaw, Michigan, where Helton lived with his girlfriend, Jimmia Green. In a December 3 search of the 723 N. Harrison Street residence, officers seized "$14,310 in cash, suspected crack cocaine, suspected cocaine, suspected marijuana, weapons, ammunition, cellular phones, cassette tapes, photographs, a telephone bill and a check payable to Germaine Helton." Helton sought to suppress that evidence, but the district court denied his request.

Using that evidence, the government indicted Helton on four counts: (1) possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1); (2) possession of marijuana in violation of 21 U.S.C. § 844(a); (3) possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and (4) possession of firearms as a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). As part of a plea agreement, Helton pleaded guilty to counts (1) and (3) and the other two counts were dismissed. The plea agreement also preserved Helton's right to appeal the denial of his suppression motion. Helton exercised that right to appeal and we now consider his appeal.

### *The Basis for the Search Warrant*

A twenty-seven page, sixty-four paragraph affidavit by FBI Special Agent Robert Howard formed the basis of the December 2 search warrant. Howard's affidavit relied heavily on information provided directly by a confidential informant referred to as FBI-1, whose track record of providing information has previously resulted in at least three search warrants and sixteen arrests. Howard's affidavit also relied on information that FBI-1 received from an anonymous tipster, FBI-A, who went inside the house at 723 N. Harrison Street and spoke with Jimmia Green.

In all, six allegations in Howard's affidavit served as the basis for the search warrant. The first five allegations relate

to Green and/or the residence at 723 N. Harrison Street: (1) based on Howard's investigation, thirty-one telephone calls were made from January to October 1998 between Peterson, Swain, and Liddell and the telephone at 723 N. Harrison Street; (2) according to FBI-A, there were "stacks" of money inside 723 N. Harrison Street in October 1998; (3) according to FBI-A, Green reported storing money for Peterson; (4) also according to FBI-A, Green explained that Peterson wanted her to hold the money because she had no criminal history; and (5) according to FBI-1, the house at 723 N. Harrison was a yellow duplex near the intersection of Harrison and Miller Streets. Specifically, the affidavit in support of the search warrant alleged those five facts through the following paragraphs:

60. Telephone records indicate that between January 6, 1998 and October 29, 1998[,] 28 calls were made from telephones associated with Peterson/Swain and 517.752.0142. That telephone is located at 723 N. Harrison, Saginaw and is listed to Jimmia Green. Between October 31, 1998 and November 3, 1998[,] 3 calls were placed to the telephone at 723 N. Harrison from the residence telephone of Rudy Liddell.

61. In early October 1998[,] FBI-1 advised me that within the prior few days FBI-1 had talked to a person [, FBI-A,] who was personally acquainted with Jimmia Green. That person had told FBI-1 that he/she had been to 723 N. Harrison recently and had seen "stacks" of money in the house. Jimmia Green had told the person [, FBI-A,] the money was Dino Peterson's and Green said Dino stored the money there because she had no criminal record and would not be suspected to be involved in such activity.

62. Based on the above, I submit that there is probable cause to believe that Jimmia Green is trafficking in controlled substances. In my experience[,] people who traffic in illegal drugs normally keep certain

### DISSENT

SILER, Circuit Judge, dissenting. I respectfully dissent. For purposes of this dissent, I assume, without deciding, that the affidavit for the search warrant was not supported by probable cause, as the majority has declared. That was also the conclusion of the district court. However, I would affirm the conclusion by the district court and the magistrate judge that the good-faith rule from *United States v. Leon*, 468 U.S. 897 (1984), requires that the search of the premises at 723 N. Harrison Street in Saginaw, Michigan, be upheld.

As recited by the majority, the affidavit filed by FBI Special Agent Robert Howard was very extensive, consisting of twenty-seven pages and sixty-four paragraphs. Admittedly, some of the detail did not add much. However, there was a significant amount of information about telephone calls and the informant's having seen "stacks" of money in the house in October, two months prior to the search. That informant also had been told by Jimmia Green that the money belonged to Dino Peterson and that Green was storing it for Peterson because she had no criminal record. The majority finds fault with this information from the informant listed as FBI-A, because there was no background data about that informant. The majority also finds fault with the information about the "stacks" of money because the informant did not say in what rooms the stacks were located, nor the amount of stacks, nor whether the stacks were on the floor or in the closet. However, from *Illinois v. Gates*, 462 U.S. 213 (1983), we know that "line-by-line scrutiny [is]. . . inappropriate in reviewing [a] magistrate's decisions." *Id.* at 246 n.14. We are not to have a "grudging or negative attitude . . . toward warrants." *United States v. Ventresca*, 380 U.S. 102,108 (1965). As we more recently stated in *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)(*en banc*), "The Court stressed that a hypertechnical critique of warrants would only, in the end, encourage warrantless searches. . . . " Thus, "[t]he

residence should have been suppressed make it unnecessary to consider the *Franks* issue.

### V.

In short, we agree with the district court that the Howard affidavit did not establish probable cause here. However, unlike the district court, we conclude that the *Leon* good faith rule does not apply to this situation. As a result, we **REVERSE** the district court's denial of Helton's suppression motion and **REMAND** this case for proceedings consistent with this opinion.

items in their residence, including: [u]nknown quantities of controlled substances; documents [that] relate to quantities of drugs possessed and sold, or payments received for drugs sold; proceeds, in cash or other forms, collected from the sale of drugs; customer lists; names, addresses and telephone number[s] of other co-conspirators, photographs of co-conspirators; residence or ownership documents; documents [that] relate to expenditures, travel or banking; pagers or cellular phones and records [that] relate to their use; firearms, ammunition and items associated with the distribution, manufacture, or use of drugs, including scales, packaging material, drug paraphernalia and substances used to dilute or process controlled substances.

63. I am aware that the appearance of 723 N. Harrison, Saginaw, Michigan; is further described as a duplex house, yellow in color located near the intersection of Harrison and Miller Streets. Entrance doors for both units are located on the south side of the residence facing the driveway. The entrance door for 723 is the west-most door located the furthest from Harrison Street. The numerals "723" are clearly marked on the front of the unit in black numbers.

64. Therefore[,] I submit there is probable cause to believe that there is currently located on the premises of 723 N. Harrison, Saginaw, Michigan . . . evidence of a violation of Title 21, United States Code, sections 841(a)(1) and 846.

The sixth allegation relates to Peterson's drug dealing operation. According to FBI-1, when Peterson dealt drugs in Saginaw, he stored some of the drug-trafficking proceeds in Saginaw with his brother and his brother's girlfriend:

50. In August of 1998[,] FBI-1 further advised that Peterson comes to the Saginaw area periodically and distributes cocaine to various individuals. Money

that is collected from the sales of that cocaine is given to Peterson's brother, Michael Peterson, who stores the money at the residence of one of Michael Peterson's girlfriends, Connie Lorkowski, who lives at 504 Tradewinds, Essexville, Michigan. Occasionally cocaine is also stored at the Lorkowski residence. Lorkowski obtains cocaine from Mike Peterson and then she sells the cocaine at Hooters Restaurant in Bay City where she works. Lorkowski hides cocaine in the toilet tank at her residence.

Conspicuously absent from paragraph 50 is any mention that Peterson stored money with persons other than his brother or his brother's girlfriend, such as Green or Helton. In short, based on those six allegations, and without further corroboration, a magistrate judge authorized the search of the 723 N. Harrison Street residence.

### The District Court's Treatment of Helton's Suppression Motion

At the district court level, Helton raised three challenges to the search of his residence. First, he argued that there was not probable cause for the search because the anonymous tipster, FBI-A, was not a proven, reliable or credible source. Second, Helton submitted an affidavit by Jimmia Green, which attacked the veracity of paragraph 61 of the Howard affidavit. In her affidavit, Green denied having "stacks" of money at 723 N. Harrison Street, but admitted to having a criminal record. Based on those averments, which called portions of paragraph 61 into question, Helton sought a *Franks* hearing to strike portions of that paragraph. Third, in oral argument before the magistrate judge, Helton's counsel raised staleness concerns.[1] He argued that the Howard affidavit's allegations

---

[1] Helton's counsel also orally argued that the warrant was overbroad by contending that the most that could have been reasonably expected at the 723 N. Harrison Street residence was money attributable to Peterson. The magistrate judge rejected this argument in light of the large scale of the drug distribution conspiracy at issue. The district court accepted the

one occasion, refused to apply the *Leon* rule where "a reasonably prudent officer would have sought greater corroboration to show probable cause." *Weaver*, 99 F.3d at 1381. In short, no reasonable officer would have attached much, if any, significance to FBI-A's statements.

Second, knowing that FBI-A's statements should be heavily discounted, no reasonable officer would believe that the Howard affidavit established probable cause to search the 723 N. Harrison Street residence. As discussed above, with FBI-A's statements receiving little weight, the other allegations in the Howard affidavit do not suffice to establish probable cause. A reasonable officer knows that evidence of three calls a month to known drug dealers from a house, a description of that house, and an allegation that a drug dealer stores drug proceeds with his brother and his brother's girlfriend (neither of whom live at or are known to visit that house), falls well short of establishing probable cause that the house contains evidence of a crime. Moreover, because FBI-A's statements are heavily discounted due to their minimal trustworthiness and reliability, they add little to the probable cause determination. Thus, a reasonable officer would recognize that without more corroboration, the Howard affidavit came well short of establishing probable cause. For that reason, the third exception to the *Leon* rule applies and the evidence obtained from the search of the 723 N. Harrison Street residence should have been suppressed.

### IV.

In his final argument, Helton contends that the search warrant affidavit contained false statements made with reckless disregard for the truth and, as a result, he is entitled to a *Franks* hearing to determine whether a preponderance of the evidence supports striking those portions of the affidavit. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *United States v. Giacalone*, 853 F.2d 470, 475-76 (6th Cir. 1988). Our conclusion that probable cause was lacking even without striking any part of the affidavit as well as our holding that evidence from the search of the 723 N. Harrison Street

it inquires "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." *Leon*, 486 U.S. at 923 n.23; *see also Allen*, 211 F.3d 977 (Gilman, J., concurring).

## B.  Standard of Review

The *Leon* determination is reviewed under the same dual standard of review as the probable cause determination — clear error review for findings of fact and *de novo* review for legal conclusions.  *Leake*, 998 F.2d at 1366.  As a legal conclusion, the district court's ultimate decision on the application of the *Leon* rule is reviewed *de novo*.  *Id.*

## C.  Analysis of the *Leon* Rule

The application of the third *Leon* exception is governed by whether the investigating officers' conduct was objectively reasonable.  Here, where the affidavit did not establish probable cause, the third *Leon* exception turns on whether a reasonable officer would know that the affidavit failed to establish probable cause.  In light of the particular deficiencies with the Howard affidavit, we make two inquires here: (1) whether a reasonable officer would believe that the anonymous tipster's statements, without more corroboration, were trustworthy and reliable and (2) whether a reasonable officer would believe that the Howard affidavit established probable cause to search the 723 N. Harrison Street residence.  Ultimately, we conclude that no reasonable officer would believe either inquiry.

First, no reasonable officer would afford much weight to the anonymous tipster's statements.  As discussed above, FBI-A's statements originated from an unknown, untested source; they were the product of multiple layers of hearsay; they were sparse in relevant detail; and, most importantly, they were not corroborated in any meaningful manner.  In light of those shortcomings, no reasonable officer would place much, if any, weight in FBI-A's report.  Moreover, at a minimum, a reasonable officer would have sought to corroborate FBI-A's statements further, especially since this Court has, on at least

were stale because the reference to "stacks" of money was based on an observation in October 1998, approximately two months before the Howard affidavit was filed.

The government countered each of Helton's challenges.  First, the government responded that there was probable cause to search 723 N. Harrison Street.  Next, the government argued that the *Leon* good-faith rule cured any absence of probable cause because the officers who obtained and executed the warrant acted objectively reasonably and in good-faith.  The government also argued against a *Franks* hearing because Howard was not knowingly or deliberately disregarding the truthfulness of matters in the affidavit.  Finally, at oral argument before the magistrate judge, the government responded to the staleness defense by contending that staleness was part of the probable cause determination and that probable cause still existed on the date of the search because Green stored money for Peterson over an extended period of time.

The magistrate judge evaluated those arguments and recommended denying Helton's suppression motion.  The magistrate judge determined that probable cause existed for the search of the 723 N. Harrison Street residence.[2]  As part of his analysis, he concluded that the Howard affidavit was not stale.  Next, the magistrate judge recommended against holding a *Franks* hearing because "if impropriety took place, it was more in the nature of negligence or innocent mistake rather than recklessness on the part of the affiant."  Despite his finding of probable cause, the magistrate judge addressed the *Leon* good-faith rule.  There, he recommended that the *Leon* good-faith rule cure any defect in probable cause because the warrant was not "so lacking in the indicia of

---

magistrate judge's recommendation on that point.

[2]Before considering the merits of the arguments, the magistrate judge *sua sponte* inquired into whether he should recuse himself under 28 U.S.C. § 455 because he had issued the search warrant.  Ultimately, he declined to recuse himself.

probable cause as to clearly indicate to police authorities that this warrant should not be executed."

The district court initially declined to accept the magistrate judge's recommendations. Rather, it chose to schedule a *Franks* hearing and a hearing on the probable cause and *Leon* issues. The government filed a motion for reconsideration arguing that (i) a *Franks* hearing was not appropriate; (ii) probable cause existed; and (iii) the *Leon* good-faith rule cured any absence of probable cause. That motion was granted.

After reconsidering those issues, the district court reached a different result. First, it declined to hold a *Franks* hearing because there was "no basis to believe that the affiant [, Howard,] acted with reckless indifference to the truth." Next, the district court rejected the staleness argument. Nevertheless, it refused to find that probable cause existed for the search warrant. That finding was of little consequence, however, because the district court determined that the *Leon* good-faith rule applied. Consequently, the district court upheld the search on that ground. Based on those conclusions, the district court denied Helton's suppression motion.

Helton appealed the district court's ruling. On appeal he raises three arguments. First, he disputes the application of the *Leon* good-faith rule here. Second, he seeks a *Franks* hearing based on Howard's reckless disregard for the truth of averments in paragraph 61 of the affidavit. Third, he argues that the information provided by the anonymous tipster, FBI-A, was stale. The government contests each of those arguments and further asserts that there was probable cause to search the 723 N. Harrison Street residence. This Court now considers those arguments.

## II.

Underlying the analysis of this case is the probable cause determination. If there was not probable cause for searching the residence at 723 N. Harrison Street (as the district court

## III.

Even without probable cause, fruits of a search may still survive the exclusionary rule under the *Leon* good-faith rule. But, the *Leon* rule does not apply here.

### A.　The *Leon* Good-Faith Rule

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that the exclusionary rule, which suppresses illegally obtained evidence, does not apply where the evidence was discovered pursuant to a search warrant that was issued in good faith. *Id.* at 922 (concluding that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion"). In reaching that holding, the Supreme Court acknowledged four exceptions to the good-faith rule:

> 1) the supporting affidavit contains information the affiant knew or should have known is false; 2) the issuing magistrate lacked neutrality and detachment; 3) the affidavit is devoid of information that would support a probable cause determination making any belief that probable cause exists completely unreasonable; or 4) the warrant is facially deficient.

*Czuprynski*, 46 F.3d at 563-64; *see also Leon*, 468 U.S. at 905, 914-15, 922-23; *Weaver*, 99 F.3d at 1380; *Leake*, 998 F.2d at 1366. Thus, in each of those situations, illegally obtained evidence will be subject to suppression, even though a search warrant was issued.

Here, Helton argues that the affidavit failed under the third exception to the *Leon* rule. To fit that exception, the executing officer must have "no reasonable grounds for believing that the warrant was properly issued." *Leon*, 486 U.S. at 923; *see also Leake*, 998 F.2d at 1366. Moreover, the objective reasonableness determination does not examine the subjective states of mind of law enforcement officers, rather

as an officer did in *Leake*. *Leake*, 998 F.2d at 1365. Nor did the investigating officers attempt any other method of directly corroborating allegations (d) and (e). The government argues that those two allegations are confirmed by allegations (a) and (c) — the phone log and Peterson's storage of drug money with others. Certainly, the fact that allegations (a) and (c) do not contradict allegations (d) and (e) increases the likelihood that allegations (d) and (e) are true. Nevertheless, this lack of inconsistency adds little to the overall believability of FBI-A's report.

Allegation (f), the assertion that Green stored drug money for Peterson because she had no criminal record, was not corroborated. That allegation was arguably the easiest to confirm, but the investigating officers do not report making any effort to verify Green's criminal record. Nor do the officers report examining the criminal records of the other two people with whom Peterson allegedly stored drug proceeds, his brother and his brother's girlfriend, as a means of corroborating that Peterson used the lack of a criminal record as a criterion for deciding the persons with whom he stored drug proceeds. Thus, without corroboration, we do not increase the weight afforded to allegation (f).

In sum, allegations (d) through (f) have not been meaningfully corroborated. As a result, their impact does not rise much beyond their minimally persuasive inherent values. Consequently, they add little to the probable cause determination.

### *Probable Cause in Light of the Totality of the Circumstances*

We now consider whether the totality of all six allegations suffices to establish probable cause. As stated above, allegations (a) through (c) fall well short of establishing probable cause to search the 723 N. Harrison Street residence. Also from above, allegations (d) through (f) have minimal persuasive value. Consequently, even when all six allegations are considered in the aggregate, they fail to establish probable cause by a significant margin.

concluded), then the only way that the fruits of the search would survive suppression is through the good-faith rule articulated in *United States v. Leon*, 468 U.S. 897 (1984).

### A.  Legal Principles Regarding Probable Cause

A basic principle of the Fourth Amendment is that there must be probable cause for a search warrant to issue. U.S. CONST. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *see also United States v. Allen*, 211 F.3d 970, 979 (6th Cir. 2000) (en banc) (Clay, J., dissenting) ("[T]he requirement that a warrant be supported by specific evidence of criminal activity before being issued is deeply rooted in our history."); *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1998) (elaborating that "the affidavit presented must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant"). This Court has explained that "[p]robable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (quoting *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (per curiam)). Moreover, where an affidavit is the basis for a probable cause determination, that affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

In evaluating whether probable cause exists for issuing a search warrant, a judicial officer may rely on hearsay evidence. *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999); *Weaver*, 99 F.3d at 1377; *see generally Jones v. United States*, 362 U.S. 257, 269-70 (1960) ("In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement

is reasonably corroborated by other matters within the officer's knowledge."), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980). When confronted with hearsay information from a confidential informant or an anonymous tipster, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying the hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238; *see also Alabama v. White*, 496 U.S. 325, 328 (1990); *Smith*, 182 F.3d at 477; *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001); *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998); *United States v. Canan*, 48 F.3d 954, 958 (6th Cir. 1995).

Within that framework, precedent provides additional direction for the treatment of hearsay information provided by confidential informants and anonymous tipsters. For hearsay evidence from a confidential informant, this Court has held that "if the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required." *Smith*, 182 F.3d at 483. Anonymous tips, however, demand more stringent scrutiny of their veracity, reliability, and basis of knowledge than reports from confidential informants. *Greene*, 250 F.3d at 479. For instance, in *Florida v. J. L.*, the Supreme Court explained that in the investigatory stop context "'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'" 529 U.S. 266, 270 (2000) (quoting *Alabama v. White*, 496 U.S. 325, 327 (1990)). Central to the Court's holding was the notion that although the anonymous tipster provided accurate information about the location and

time is of less significance.'") (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). Nevertheless, with each day that passed, the likelihood that the "stacks" of money remained at 723 N. Harrison Street decreased. In short, reliability concerns detract, albeit less so than the veracity concerns, from the persuasiveness of FBI-A's anonymous tip.

Finally, there is little reason for concluding that FBI-A had a sound basis for knowledge for the tip. The "basis for knowledge" factor uses the degree of detail in a tip to infer whether the tipster "had a reliable basis for making his statements." *Smith*, 182 F.3d at 477. Here, FBI-A claims to have visited the inside of the 723 N. Harrison Street residence, yet FBI-A provides almost no details of the visit. FBI-A did not describe which rooms he or she visited, where he or she saw the stacks of money, how high the stacks of money were, or how the stacks were stored, e.g., on a table, on the floor, in a closet. However, the fact that FBI-A reported only "stacks" of money and no further criminal activity lends some credibility to FBI-A's report because it suggests that FBI-A did not exaggerate his or her alleged perceptions. In its totality, however, FBI-A's anonymous tip was sparse in relevant detail, and for that reason it again loses persuasive value. *See Allen*, 211 F.3d at 976.

Putting the veracity, reliability, and basis of knowledge factors together, we afford minimal weight to the inherent value of FBI-A's statements. Despite the minimal probative value of FBI-A's tip standing by itself, the tip could take on an increased level of significance if it were corroborated, even in part, by later investigation. *See Leake*, 998 F.2d at 1365 (underscoring the importance of investigating an anonymous tip before a warrant is requested). Here, however, the law enforcement officers did not corroborate FBI-A's allegations.

For instance, although allegations (d) and (e) suggest that evidence of criminal activity — storing stacks of Peterson's drug money — existed at 723 N. Harrison Street, the investigating officers did not monitor the suspicious residence

First, Howard's affidavit does not provide a basis for trusting the veracity of FBI-A's allegations. This Court has previously explained that "[a]n affidavit . . . must contain a statement about some of the underlying circumstances indicating the informant was credible or that his information was reliable." *Smith*, 182 F.3d at 477; *see also Gates*, 462 U.S. at 239. Despite that exhortation, the Howard affidavit fails to provide any background information about FBI-A. The affidavit likewise fails to offer any basis for believing that FBI-A would be telling the truth. These omissions are exacerbated because FBI-A has no track record of providing accurate tips. For those reasons, we must, under *Smith*, place little weight in the veracity of FBI-A's report.

FBI-A's anonymous tip also has reliability problems. For starters, the statements came from persons two and three degrees removed from the affiant,[3] so the accuracy of the transmission is questionable from the outset. In addition, FBI-A's report of seeing the "stacks" of money was two months old.[4] Generally, a court considers the following four factors in determining whether a probable cause finding is stale: "the defendant's course of conduct; the nature and duration of the crime; the nature of the relevant evidence; and any corroboration of the older and more recent information." *United States v. Czuprynski*, 46 F.3d 560, 567 (6th Cir. 1995) (en banc). Because the evidence of criminal activity here is the *storage* of drug money, the likely duration of this evidence is relatively long. *See Canan*, 48 F.3d at 959 ("'If an affidavit recites activity indicating protracted or continuous conduct,

[3] Allegation (d) was two orders removed; it originated with FBI-A and was transmitted through FBI-1 and Howard. Allegations (e) and (f) were three orders removed; they originated with Green and were transmitted through FBI-A, FBI-1, and Howard.

[4] Although Helton presents the staleness defense as a completely independent basis for invalidating the search, that manner of presentation is misleading. Helton's staleness defense is nothing more than a challenge to probable cause that is subject to the *Leon* good-faith rule. *See Greene*, 250 F.3d at 480.

appearance of concealed criminal activity (a juvenile with a firearm), the tip had to "be reliable in its assertion of illegality, not just in its tendency to identify a determinative person." *Id.* at 272. Based on that principle, the Supreme Court affirmed the suppression of evidence obtained from an investigatory stop where the criminal activity component of the anonymous tip was not corroborated. *Id.* This Court reached a similar result in *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993), where it concluded that the persuasive value of an anonymous tip sparse in relevant detail and wholly uncorroborated was too low to establish probable cause. *Id.* at 1362; *see also Allen*, 211 F.3d at 976 (approving of the *Leake* holding).

### B. Standard of Review

An appellate court reviews a district court's determination of probable cause at a suppression hearing under two "complementary" standards. *Leake*, 998 F.2d at 1362. The factual findings are upheld unless they are clearly erroneous and the legal conclusions are reviewed *de novo*. *Smith*, 182 F.3d at 476; *Leake*, 998 F.2d at 1362. Moreover, this Court affords "great deference" to the issuing judge's findings in support of a search warrant and will not set them aside unless they were arbitrary. *Greene*, 250 F.3d at 478; *Allen*, 211 F.3d at 973; *Mays*, 134 F.3d at 814; *Weaver*, 99 F.3d at 1376; *Leake*, 998 F.2d at 1363.

### C. Probable Cause Analysis

As set forth above, six allegations in the Howard affidavit relate to whether the 723 N. Harrison Street residence contained evidence of drug trafficking. The question here is whether those six allegations, when considered in their totality, provide probable cause for the search.

Because the veracity, reliability, and basis for knowledge for hearsay evidence are considered as part of the probable cause determination, *see Gates*, 462 U.S. at 230, it is helpful to group the six allegations by their source. One allegation was independently confirmed by affiant Howard: (a) thirty-

one telephone calls were made from January to October 1998 between Peterson, Swain, and Liddell and the telephone at 723 N. Harrison Street. Two allegations came to Howard from a confidential informant, FBI-1: (b) the 723 N. Harrison Street house was a yellow duplex near the intersection of Harrison and Miller Streets and (c) Peterson stored drug money with his brother and his brother's girlfriend. Three allegations originate from FBI-A, an anonymous tipster, and were relayed to affiant Howard by FBI-1: (d) there were "stacks" of money inside 723 N. Harrison Street in October 1998; (e) Green admitted that she held money for Peterson; and (f) Green admitted that the reason Peterson wanted her to store the money was because she had no criminal history. We now evaluate whether these allegations establish probable cause.

### The Affiant's Allegation

By itself, allegation (a), the record of thirty-one phone calls between 723 N. Harrison and Peterson, Swain, and Liddell does not establish probable cause. Surely, the fact that a person averages three phone calls a month to a drug dealer does not create a probability that the person has contraband in their house. Moreover, if it did, then any person who averaged three phone calls a month with a suspected drug trafficker would expose themselves to a search. That result reaches too far to be correct.

### The Confidential Informant's Allegations

Even after the statements of the confidential informant, FBI-1, are added to the mix, there is still not probable cause for the search of the 723 N. Harrison Street residence. FBI-1's statements may be treated as trustworthy and reliable, even without further corroboration, based on FBI-1's track record. Because FBI-1 had previously provided information for three searches and sixteen arrests, circuit precedent affords his statements a high degree of trustworthiness and reliability. *See Smith*, 182 F.3d at 483 (explaining that "information supplied by an informant of proven reliability may be sufficient, standing alone, to demonstrate probable cause");

*see also Allen*, 211 F.3d at 979 (Clay, J., dissenting) (explaining with dissatisfaction that "[a]s a result of today's holding, any tip provided by an informant who has provided reliable information to the police in the past is sufficient to constitute probable cause for the warrant to issue, irrespective of the bare, generalized nature of the information provided and without any corroboration by the police"); *Greene*, 250 F.3d at 480 ("Sixth Circuit precedent clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable.").

Despite the likelihood that allegations (b) and (c) are accurate, they add little to the probable cause determination. With respect to allegation (b), the description of the house at 723 N. Harrison Street does almost nothing to increase the likelihood that the fruits of criminal activity would be found there. Similarly, allegation (c), the assertion that Peterson stores money with his brother and his brother's girlfriend, suggests at most that Peterson stored drug proceeds with other persons. It does not link Peterson's drug storage practice to the 723 N. Harrison Street residence in any way. Thus, the impact of allegation (c) on the probable cause analysis is merely that it leaves open the possibility that Peterson stored drug proceeds at the 723 N. Harrison Street residence. That slight possibility, when added to the other minimally probative evidence — the phone log and the description of the 723 N. Harrison Street residence — hardly creates a probability that the 723 N. Harrison Street residence contained drug proceeds.

### The Anonymous Tipster's Allegations

Allegations (d) through (f), supplied by FBI-A, do not merit much weight in the probable cause determination. As made clear by *Florida v. J. L.* and *Illinois v. Gates*, to receive a high level of consideration, allegations from an anonymous tipster must demonstrate veracity, reliability, and a sound basis for knowledge. *J. L.*, 529 U.S. at 271-72; *Gates*, 462 U.S. at 230.