**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Joe Louis MCINTOSH, Defendant–Appellee.**

No. 03–1458.

United States Court of Appeals, Sixth Circuit.

Aug. 26, 2004.

Joan E. Meyer, U.S. Attorney's Office, Grand Rapids, MI, for Plaintiff–Appellant.

Scott Graham, Howard & Howard, Kalamazoo, MI, for Defendant–Appellee.

Before BATCHELDER and SUHRHEINRICH, Circuit Judges, and RICE, District Judge.*

## OPINION

RICE, District Judge.

This is a criminal prosecution in which the Defendant is charged in a two count Indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and with possession with intent to deliver five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). The matter is currently before the Court on the Government's appeal of the district court's granting of Defendant's motion to suppress evidence obtained during a search of his residence. For the reasons that follow, we conclude that the district court erred in granting Defendant's motion to suppress, and its decision is thus reversed.

### I. *Background*

On August 6, 2002, Officer Peter Gavalis of the Grand Rapids Police Department

* The Honorable Walter Herbert Rice, Judge of the United States District Court for the South-   ern District of Ohio, sitting by designation.

obtained a search warrant from a state judge for a residence at 1055 Lafayette Avenue in Grand Rapids, Michigan. In his affidavit supporting the search warrant, Officer Gavalis stated:

> In this regard, your affiant met with a reliable and credible informant who indicated from personal knowledge that cocaine could be purchased at the above-described premises. This informant from personal knowledge is familiar with the characteristics of cocaine, [and] the manner in which the cocaine is used and sold in the community. When your affiant met with the informant, the informant directed your affiant to the above-described premise[s]. The informant had been at the above-described premises within the last 36 hours and observed a quantity of cocaine being sold there. The cocaine as described by the informant is being sold for various amounts of U.S. currency.
>
> The cocaine is easily concealed on or about the person. When the informant left the premise[s], there were additional amounts of cocaine on the premise[s] being offered for sale. The person(s) selling the cocaine is/are described as "P–Doody", B/M 5'09/160, 33 yrs.

Further, Officer Gavalis's affidavit described the basis for his belief that the informant was credible and reliable:

> Your affiant has known the informant at least one year and has made at least ten controlled purchases of controlled substances: cocaine. All of these controlled purchases tested positive for the controlled substance cocaine. The informant has supplied information on at least fifteen drug traffickers in the community, said information having been verified by your affiant through police records, personal observations, other police officers, and other reliable informants. The said informant has supplied

information for the issuance of at least ten prior search warrants. The information led to the arrests of ten subjects for violations of the controlled substance act.

The warrant was executed later that day. The residence belonged to Defendant, who was inside when the police arrived. The police found one ounce of crack cocaine in the living room and two loaded handguns in the bedroom, one of which was stolen. Defendant was carrying $3,159.00 on his person. Defendant made a number of incriminating statements during and after the search.

On April 7, 2003, the district court conducted a suppression hearing, at which time it entered an order suppressing the firearms and crack cocaine found in Defendant's residence and the statements that Defendant made during the search. The court believed the "one glaring deficiency in the warrant affidavit" was its failure to connect P–Doody to 1055 Lafayette Avenue. The court indicated that, as far as one could tell from the affidavit, "this was a traveling show which presumably was somewhere else when the police arrived at [the address]." The court therefore found the warrant to be deficient because, it believed, granting warrants as to residences where a single drug sale has occurred, and where there is no reason to believe that the seller is a resident or frequent user of the house, will routinely trammel the rights of innocent persons residing in such places. The court also noted that its conclusion is all the more true when, as here, the information is based on the hearsay of an unidentified source.

For ostensibly the same reason, the district court concluded that the good faith exception to the exclusionary rule did not apply. Apparently believing that the affidavit was so lacking in any indicia of prob-

able cause so as to render a police officer's belief in its existence entirely unreasonable, the court held that the good faith exception was not applicable.

## II. *Standard of Review*

The district court's factual findings on a motion to suppress are reviewed for clear error and its legal determinations are reviewed de novo. *United States v. Williams*, 224 F.3d 530, 532 (6th Cir.2000), *cert. denied*, 531 U.S. 1095, 121 S.Ct. 821, 148 L.Ed.2d 704 (2001). However, the standard of review of a judge's determination of probable cause in issuing a warrant is stricter, in that a court is to pay "great deference to a magistrate judge's determination of probable cause and will not set it aside unless it is arbitrarily exercised." *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir.1998).

## III. *Analysis*

The Government raises two issues on appeal. *First*, it argues that the district erred in holding that the warrant lacked probable cause. *Second*, it argues that the district court erred in holding that, under the good faith exception to the exclusionary rule, the police officers did not have a reasonable basis to believe that the search warrant affidavit established probable cause. Each will be addressed in turn.

### A. *Probable Cause*

Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir.1999) (*quoting United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990)). This case involves an affiant's use of a confidential informant ("CI") to supply probable cause for a warrant. The review of the sufficiency of such an affidavit underlying a search warrant follows the principles established by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). There, the Court rejected the rigid tests that had evolved as lower courts attempted to implement earlier Supreme Court decisions, in favor of a "totality of the circumstances" approach. *Id.* at 230–31, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (abandoning the inflexible two-part test developed in the light of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). The Court explained its deviation from the earlier approach in this way:

> "[V]eracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of [a CI's] report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case.... Rather, ... they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

*Id.* at 230, 103 S.Ct. 2317.

*Gates* also guides our deference to the issuing magistrate's determination of probable cause: "line-by-line scrutiny [of an underlying affidavit is] ... inappropriate in reviewing [a] magistrate['s] decisions." *Id.* at 246 n. 14, 103 S.Ct. 2317, 76 L.Ed.2d 527. The Court emphasized in that case that it had "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Id.* at 236, 103 S.Ct. 2317. It soundly rejected "[a] grudging or negative attitude by reviewing courts toward warrants." *Id., quoting United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741,

13 L.Ed.2d 684 (1965). Rather, reviewing courts are to accord the magistrate's determination "great deference." *Id., quoting Spinelli,* 393 U.S. at 419, 89 S.Ct. 584. The Court stressed that a hypertechnical critique of warrants would only, in the end, encourage warrantless searches, undermining the very Fourth Amendment right such an approach would seek to protect. Instead, it reaffirmed the traditional standard: "Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id., quoting Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). This circuit has long held that an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised. *See United States v. Allen,* 211 F.3d 970, 973 (6th Cir.2000) (*en banc*), *citing United States v. Swihart,* 554 F.2d 264, 267–68 (6th Cir.1977).

In *Allen,* this Court, sitting *en banc,* reviewed the sufficiency of an affidavit based upon the personal observation of criminal activity by a CI who had been named to the magistrate and who, as averred by the affidavit, had provided reliable information to the police in the past about criminal activity. Therein, it rejected the *Allen* panel's approach to the "totality of the circumstances" analysis, in which the panel applied a two-factor test in which a CI's information would gain significant weight when supported by (1) explicit and detailed description gleaned from firsthand observation, and (2) independent corroboration. 211 F.3d at 975. The Court agreed that the presence of such factors would weigh in favor of probable cause, but it criticized the panel for devising an analysis that drew more attention to individual characteristics than to the totality of the circumstances—i.e., the chief evil sought to be addressed by *Gates* in eliminating the *Aguilar–Spinelli* test. *See id., citing Gates,* 462 U.S. at 230 n. 5, 103 S.Ct. 2317. Returning to a proper invocation of the totality of the circumstances test, the Court held that where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate may believe that evidence of a crime will be found. *Id.* at 976. With this backdrop, we proceed to analyze the circumstances of the case herein.

■ First, the track record of the CI in this case weighs significantly in favor of the affidavit's reliability. Decisions from the Supreme Court and this Court, both before and after *Gates,* indicate that an informant's record in providing information that ultimately led to arrests and/or convictions is highly instructive in assessing his reliability. *See, e.g., McCray v. Illinois,* 386 U.S. 300, 302–03, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) (informant had provided information more than fifteen times and his information had led to "numerous arrests and convictions"); *United States v. Seta,* 669 F.2d 400, 403 (6th Cir. 1982) (informant's prior information had led to "several arrests and convictions"); *United States v. Smith,* 182 F.3d 473, 478 (6th Cir.1999) (informant had provided information 26 times in the past, and in each instance, the information was correct). In this case, information from the same CI has, in the past, led to ten different arrests of drug suspects, as well as ten prior search warrants. Further, the CI has provided corroborated information on 15 drug traffickers.

Defendant, however, argues that the CI's information conveyed by the affidavit is unreliable because, unlike the CI in *Allen*, the CI herein was never identified to the magistrate who issued the warrant. However, Defendant places a significance on this distinction that is simply not found in Supreme Court precedent. In fact, the existence of the *Gates* test, preceded by the *Aguilar–Spinelli* test, demonstrates the compatibility, given the presence of certain conditions, of the use of confidential informants and the Fourth Amendment. Rejecting the use of such an informant, solely on the basis that his or her identity was not disclosed to the magistrate who issued the warrant, would render *Gates* pointless.

The non-disclosure of the CI's identity to the magistrate animated the district court's skepticism of the CI's credibility, which analogized this case to *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996), which it distinguished from *Allen*. According to the district court, the latter upheld a probable cause determination in which the CI's identity had been disclosed *in camera* to the issuing magistrate, whereas the former reversed a probable cause determination in which no such disclosure was made. This analysis is deficient for a number of reasons. *First*, the basis of the district court's factual distinction is unsupported, in that the officer in *Weaver* did, in fact, disclose the identity of the CI to the judge issuing the warrant. *See Weaver*, 99 F.3d at 1375. *Second*, this Court, sitting *en banc* in *Allen*, indicated that what was fatal to the affidavit in *Weaver* was the affidavit's lack of probable cause to believe that any marijuana previously observed by the CI would remain to be discovered by a search, because there was no mention of the quantity of drugs observed. *Allen*, 211 F.3d at 974. Although the Court in *Allen* did consider the disclosure of the CI's identity as a positive

factor, it was not the only such, and, therefore, the non-disclosure of the CI's identity to the magistrate should not be dispositive here. In fact, the CI in *Allen* possessed many other similarities to the CI in this case, including that the CI was personally known to the officer, that the CI's reliability had been proved over an extended period of time, and that in that time, the CI's information had generated numerous search warrants and eventual arrests. *See id.* at 976. As such, affirming the district court's probable cause determination because of the failure to disclose the CI's identity to the magistrate would ignore the totality of the circumstances in favor of one particular element, directly subverting the Supreme Court's mandate in *Gates* that lower courts avoid giving undue weight to isolated elements. Accordingly, even if *Allen* and *Weaver* could be factually distinguished in the manner urged by the district court, we still do not believe that the failure of Officer Gavalis herein to disclose the identity of the CI to the magistrate would impugn the reliability or credibility of the CI.

Another factor weighing in favor of a finding of probable cause is that, like the affidavit in *Allen*, the affidavit herein was based on the CI's personal observation, with details, of criminal activity undertaken at a particular location. The district court, however, found this to be inadequate, noting that the affidavit established no connection between P–Doody and the residence at 1055 Lafayette Ave. As noted *supra*, the court speculated that, based on the affidavit, the CI may very well have observed nothing more than a traveling show that would be elsewhere by the time the police arrived. This, said the district court, would doom any probable cause determination.

There are several problems with this. *First*, most obviously, the affidavit ex-

pressly indicates that when the CI left the premises (i.e., after witnessing the drug sale), there were additional amounts of cocaine that remained on the premises, that were being offered for sale. The presence of the remaining cocaine available for sale suggests that the show would remain at 1055 Lafayette Ave for repeat performances. *Second,* it is not the case that the Fourth Amendment required the warrant to connect P–Doody to the house. In fact, a warrant need not concern itself with the person to be searched because "[s]earch warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *United States v. Pinson,* 321 F.3d 558, 564 (6th Cir.2003), *quoting Zurcher v. Stanford Daily,* 436 U.S. 547, 555–56, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).

It spite of this, Defendant insisted at oral argument that in all of this Court's recent Fourth Amendment cases regarding such drug sales, with the exception of *Pinson,* the seller was linked to the property to be searched. However, it is simply not the case that any of the prior decisions *required* the sort of link urged by Defendant. To be sure, a number of the cases did feature factual situations in which the individual observed by the CI dealing drugs also happened to be the resident of the house. *See, e.g., United States v. Finch,* 998 F.2d 349, 352 (6th Cir.1993) (affidavit linked the defendant with the residence that was subject to the search); *United States v. Pelham,* 801 F.2d 875, 878 (6th Cir.1986) (same). Yet, the fact that, in these previous cases, the CI was able to link the drug sale to the resident of the location to be searched did not and does not create a legal rule that such a link *must* be present. As Defendant himself concedes, such linkage did not exist in *Pinson,* decided by this Court last year, yet that did not stop this Court from affirming probable cause therein. In that case, the affidavit described a controlled buy of cocaine by the CI. The affidavit did not provide a name or description of the person(s) from whom the CI purchased the cocaine. However, this Court expressly rejected the defendant's argument there that the lack of name or description vitiated probable cause. Instead, the Court noted that " '[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought.' " *Pinson,* 321 F.3d at 564, *quoting Zurcher,* 436 U.S. at 556. In urging that we deem the affidavit herein to be deficient for failing to link the sale witnessed by the CI to Defendant, he would have us establish a requirement for probable cause that this Court, as well as the Supreme Court, has explicitly stated does not exist. We decline to do so. The affidavit not only described the drug sale that occurred inside the house at 1055 Lafayette Ave., but it also indicated that additional drugs remained available for sale following that event.

Defendant advances other reasons why he believes the affidavit lacked probable cause. None of them is persuasive.

First, Defendant criticizes the affidavit because it "does not indicate that the informant has any reason to believe that criminal activity will occur at the property at any time after the events allegedly observed by the informant." This argument is similar, but not identical, to the argument described and rejected *supra,* that the affidavit failed to establish a link between the sale witnessed by the CI and the residence to be searched. It too is flawed, however, because under this ratio-

nale, only clairvoyant individuals (who could predict the times and locations of future drug deals) could be relied upon to provide probable cause.

Defendant also argues that the affidavit was defective because it used boilerplate language. For this, he relies on *Weaver*, yet this exact criticism was considered and rejected by this Court in *Allen*. As the Court rightly noted in *Allen*, this argument is actually a different way of suggesting that the affidavit lacked specificity. 211 F.3d at 975. However, since the affidavit here was quite specific in that it was based on an informant's personal knowledge of a particular type of drug at a particular location, observed at a particular time, it does not suffer from a lack of specificity.

Lastly, Defendant argues that the information is stale, in that the warrant was issued up to 36 hours after the information was obtained. However, as the Government notes, this Court has permitted even larger amounts of time to pass following the moment at which the police obtained the information. *See, e.g., Allen*, 211 F.3d at 972, 975 (72 hours between informant's observation of drugs and issuance of warrant); *Finch*, 998 F.2d 349, 352 (6th Cir. 1993) (five days between the informant's observation of cocaine and the issuance of a warrant). Accordingly, the information was not stale, either as a matter of fact or of law.

For all of the foregoing reasons, the affidavit was not lacking in probable cause.

### B. *Good Faith Exception*

Even were we to deem the affidavit to lack probable cause, the good faith exception to the exclusionary rule would nonetheless operate to prevent the suppression of the evidence in question. In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that the exclusionary rule, which suppresses illegally obtained evidence, does not apply where the evidence was discovered pursuant to a search warrant that was issued in good faith. *Id.* at 922, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (concluding that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion"). In reaching that holding, the Supreme Court acknowledged four exceptions to the good-faith rule: 1) the supporting affidavit contains information the affiant knew or should have known is false; 2) the issuing magistrate lacked neutrality and detachment; 3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or 4) the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid.

The district court analogized this case to this Court's decision in *United States v. Helton*, 314 F.3d 812 (6th Cir.2003), and held that *Leon*'s third exception to the good faith rule, where an affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, applies. Specifically, the district court held that the affidavit herein "lack[ed] any stated basis [for] connecting P–Doody to the place being searched other than a single drug deal in the past."

*Helton*, however, is clearly distinguishable. In that case, the affidavit in question relied upon a CI who, in turn, relied heavily upon an anonymous tipster, whose report was not corroborated by the law enforcement officers involved. The information from the anonymous tipster largely concerned his or her observation of proceeds of drug sales at the location to be searched. The affidavit was rife with

shortcomings in each of the factors used to discern probable cause with respect to the information provided by the anonymous tipster. Specifically, the Court noted the affidavit's failure to provide a basis for trusting the veracity of the anonymous tipster's allegations, given the absence of any background information of the tipster or any track record for providing accurate tips. 314 F.3d at 822. The Court also noted reliability problems, in that the anonymous informant's statements came from persons two and three degrees removed from the affiant. The Court further noted that the informant's report of seeing "stacks" of money was two months old.[1] *Id.* Finally, the Court found little reason for concluding that the informant had a sound basis for knowledge, in that his/her report lacked any details regarding the visit to the residence, including the rooms visited, where he/she viewed the stacks of money, how high the stacks were, or how the stacks were stored. *Id.*

After having concluded that the warrant was deficient for lack of probable cause,

the Court held that the third exception to the good faith rule applied because no reasonable officer would afford much weight to statements that were from an unknown, untested source; that were the product of multiple levels of hearsay; that were sparse in relevant detail; and that were not corroborated in any meaningful manner. *Id.* at 824. The most obvious difference between *Helton* and this case is that the CI herein was, in fact, not anonymous. Instead, his or her identity was known to the affiant, thus eliminating concerns inherent in the use of information from individuals whose identity is unknown to the affiant, as was the case in *Helton*.[2]

■ Further, because of this, the officer who was the affiant herein simply was not in a situation that required him to rely on statements from unknown, untested sources, that were produced only by multiple levels of hearsay.[3] Instead, as noted *supra*, the information came directly from the CI, who had a reliable track record and who was known to the affiant. Simi-

---

1. The Court acknowledged that the duration of such evidence is relatively long, but it noted that, with each day that passed, the likelihood that the money observed by the informant remained at the residence decreased. *Id.*

2. Specifically, the fact that the affidavit in the case *sub judice* is not based on information provided by an anonymous informant renders unnecessary the need for independent police corroboration. *See Allen*, 211 F.3d at 976 (indicating that circumstances in which a CI is known to the officer who signed the affidavit—and therefore not anonymous—do not resemble other cases in which courts have required substantial independent corroboration because of the absence of any indicia of the informants' reliability). *Allen* is not any less applicable here merely because, in that case, the affiant disclosed the identity of the CI to the magistrate. *First*, as noted *supra*, that distinction is far from dispositive. *Second*, and relatedly, unlike the cases cited by *Allen*, the indicia of reliability simply are not absent.

As elaborated *supra*, the affiant provided detailed information regarding the CI's track record and basis for knowledge.

3. Of course, contrary to the district court's belief that the CI's supposed hearsay justified suppression here, this Court has previously held that supporting facts in an affidavit may come from hearsay information supplied by an informant. *United States v. Smith*, 182 F.3d 473, 477 (6th Cir.1999), *citing Jones v. United States*, 362 U.S. 257, 269–70, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Accordingly, we do not suggest (nor do we interpret *Helton* to have suggested) that the presence of hearsay in an affidavit is sufficient to defeat the presence of probable cause or an officer's claim of good faith reliance on such an affidavit. It is reasonable, however, to suggest that statements from sources not previously known to be reliable that arrive in an affidavit only by multiple instances of hearsay, would not present the ordinary indicia of probable cause. Regardless, that problem is not present here.

**74**

larly, Defendant's only argument with respect to good faith is that reliance on an affidavit making no connection between the single sale witnessed by the CI and what might be located at the residence 36 hours later could not be made in good faith. For all of the reasons described supra, however, this argument is unpersuasive. *First,* as noted, the CI's statement that additional drugs remained after the transaction that he or she witnessed does constitute such a connection. Regardless, *second,* this argument again engages the erroneous assumption that the affidavit needed to link P–Doody to the house. Because no such requirement exists, Defendant's argument that the good faith exception to the exclusionary rule would not apply fails.

Accordingly, even were we to conclude that the warrant was deficient in probable cause, we believe that the police relied in good faith on what appeared to be a facially valid warrant. Contrary to the holding of the district court, we do not believe that it was so lacking in any indicia of probable cause as to render official belief in its existence unreasonable. As such, the circumstances do not give rise to an exception to the good faith rule.

IV. *Conclusion*

For all of the foregoing reasons, the district court's granting of Defendant's motion to suppress is reversed, and the matter is remanded to the district court for further proceedings consistent with law.